UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br>v. )<br><br>ERIC TABARO NSHIMIYE, )<br><br>Defendant. ) | Case No. 1:24-cr-10071-FDS |

## **MOTION AND MEMORANDUM IN SUPPORT OF BOND**

COMES NOW, Defendant Eric Nshimiye, by and through his counsel of record, Kurt P. Kerns of Kerns Law Group, LLC and Maksim Nemtsev of Maksim Nemtsev, PC, and hereby submits the following motion and incorporated memorandum of law in support of bond in the above-captioned matter. In support thereof, Defendant states as follows:

Eric Nshimiye's charges stem from testimony more than five years ago before this Honorable Court in *United States v. Jean Leonard Teganya*, 17-cr-10292-FDS, and his allegedly fraudulent statements to the Government in connection with certain immigration applications decades ago. The legal presumption in this case is that Mr. Nshimiye should be released. To detain him before trial, the Government must prove and this Honorable Court must find that no conditions exist sufficient to *reasonably assure* his appearance at future court proceedings.[1] *See United States v. Koenig*, 912 F.2d 1190, 1192-1193 (9th Cir. 1992) (in reviewing a magistrate's detention order, a district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference").

---

[1] The Magistrate in the Northern District of Ohio did not find Eric to be a danger to the community. The sole basis for his detention is an alleged serious risk of flight. Dkt. 14 at 3.

1

Importantly, none of the charges against Mr. Nshimiye carry a mandatory minimum term of incarceration or a presumption of detention, and Eric strongly believes, and intends to prove at trial, that, among other things, these allegations levied by purported witnesses to conduct that occurred more than thirty years ago, are simply false.

Moreover, pretrial detention is not necessary here. The Government can point to no facts in the record showing that Mr. Nshimiye is prepared, or has taken any concrete steps to flee, or that he will decline to follow this Honorable Court's orders and conditions of release. Indeed, the Government's charges did not come as a surprise. More than five years ago the government accused Eric of being a member of the MRND, of attending rallies and meeting, of attending trainings, and of being involved in the killing of four Tutsi students. Dkt. 1-1 at 17. The fact that Eric remained in the United States after the Government's accusation is concrete evidence of his commitment to remain with his family and to contest the charges against him. Further, any ostensible concern of flight can readily and reasonably be addressed short of detention. This Honorable Court may impose any number of suitable conditions sufficient to secure Mr. Nshimiye future appearances, including *inter alia* (i) the posting of property by him and his family member in an amount determined sufficient by this Honorable Court;[2] (ii) the surrender of his passport to the Government and an agreement not to seek or obtain any new passport during the pendency of this matter; (iii) home confinement; and (iv) 24/7 electronic GPS monitoring.

These same sorts of conditions have reasonably assured the appearance of multiple high-risk international defendants while allowing them to assist their attorneys with the preparation of

---

[2] Not only is Eric willing to post his own home to collateralize any bail, but also the defense received offers from Eric's brothers, his nieces, his nephews, and even a friend to post their homes as collateral. The defense has provided the government with a list of five properties belonging to these individuals, their addresses, and their approximate equity. While the defense does not believe that such a bail package is necessary to secure Eric's future appearance, this Honorable Court may rely on some or all of these properties as collateral.

their defense. *See e.g., United States v. Sabhnani*, 493 F.3d 63 (2d Cir. 2007) (reversing district court order of detention of defendants, who were natives of Indonesia, and ordering release despite defendants' "strong motive to flee" because of serious charges and "strong" evidence of guilt, despite finding that defendants faced "lengthy term of incarceration" if convicted, despite finding defendants possessed "ample means to finance flight," despite finding that defendants "maintained strong family ties to their native countries as well as personal and professional ties to various locations in Europe and the Middle East," and despite finding that defendants "could, with relatively little disruption, continue to operate their highly lucrative business from any number of overseas locations"); *United States v. David Sidoo*, 19-cr-10080-NMG, Dkt. 13 (D. Mass) (the district court ordered the release of defendant, a citizen of Canada charged with conspiracy to commit wire fraud, honest services fraud, and money laundering. The defendant, who had no status in the United States, was permitted to reside in his home in Canada during the pendency of his United States criminal case); *United States v. Karni*, 298 F. Supp. 2d 129 (D.D.C. 2004) (defendant was alleged to have violated the Export Administration Act and IEEPA by acquiring nuclear triggers and exporting them to Pakistan. Defendant was an Israeli national who had resided in South Africa for the eighteen years preceding his arrest and had "no ties to the United States or the Washington, D.C. area" of any kind. Indeed, he "was only in this country in order to participate in a ski vacation with his wife and daughter." Although "the weight of the evidence against Defendant is substantial," the Court found that none of the foregoing justified pretrial detention under the Bail Reform Act.) These precedents underscore the fundamental principle that, in the United States, there is a "strong presumption against detention." *United States v. Hanson*, 613 F.Supp.2d 85, 87 (D.D.C. 2009).

As shown in the numerous letters of support from family and friends accompanying this Memorandum, Eric is a fifty-two-year-old American citizen, who for decades has been a beloved husband, father, and friend with an admirable history of kindness, good deeds, and keeping his promises, and, notably, no criminal history since his arrival to the United States in 1995. (*see* Exhibit A). He has held the same job for decades and has no history of non-appearance. Probation rightfully recommended, during the detention hearing in Ohio, release on a $20,000 unsecured bond. His law-abiding history and personal characteristics militate against serious flight risk and strongly support pretrial release as both show he will abide by any conditions imposed and will appear in court as needed in this matter.

While the crimes with which Mr. Nshimiye has been accused are in fact non-violent offenses, one element will require proof that Mr. Nshimiye participated in Rwandan war crimes. This case will therefore require proof as to what happened in the small Rwandan town of Butare in 1994—some thirty years ago at a time when that country was encased in a civil war.

The Court should initially note that the International Criminal Tribunal for Rwanda was specifically established for the prosecution of persons responsible for genocide and other serious violations of international humanitarian law coming out of Rwanda in 1994. That Tribunal was established by the United Nations Security Council and has been in operation in Arusha, Tanzania prosecuting alleged war criminals from Rwanda since November of 1994. That Tribunal has never suspected, accused, or even mentioned Eric Nshimiye.

Additionally, Human Rights Watch had investigators on the ground soon after the genocide documenting who was responsible for crimes in the town of Butare. Curiously, Mr. Nshimiye was never wanted by the I.C.T.R. as a genocidaire, nor has a single HRW investigator in the area at the time named him as a suspect. Only three decades later, after Mr. Nshimiye agreed to act as a

defense witness, did Rwandan accusers step forward. This is the *modus operandi* for these types of cases out of Rwanda. Dare testify for the defense, and you face accusation yourself.

In truth, Mr. Nshimiye is not, nor has he ever been, wanted by those tasked with the job of prosecuting war criminals in Rwanda. Nevertheless, the Justice Department has seen fit to accuse Mr. Nshimiye in a United States federal district court based on supposed crimes committed in Rwanda over thirty years ago. Due process concerns aside; the fact remains that the Government has no reliable evidence that Eric Nshimiye is in fact <u>currently</u> a flight risk or is in fact <u>currently</u> a danger to the community. Eric himself, as well as four friends and family members, will post their very homes as collateral to assure his appearance.

Importantly, incarceration before trial "substantially impacts the quality of the[] defense" and "increase[s] the likelihood that the detainee will be convicted, imprisoned, and subjected to prolonged deprivation of liberty, privacy, and other fundamental elements of human existence." Samuel R. Wiseman, "*Pretrial Detention and the Right to be Monitored*," 123 YALE L. J. 1344 (2014). Accordingly, '[o]ur system of criminal justice embraces a strong presumption against detention." *Hanson*, 613 F. Supp. 2d at 87. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. at 1405.

Consistent with these principles, 18 U.S.C. §3142(b) MANDATES pretrial release ("shall order the pretrial release") on personal recognizance or an unsecured appearance bond <u>unless</u> the court determines that "such release will not reasonably assure" the person's appearance or "will

endanger the safety of any other person or the community." In short, the Act emphasizes and prioritizes release on personal recognizance or an unsecured appearance bond.

Where the Government moves for detention based on flight risk, the Government must satisfy a dual burden of proof:

> First, [the Government] must establish that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the [G]overnment must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court.

*Sabhnani*, 493 F.3d at 75. In other words, "[e]ven if the Court concludes the government proves by a preponderance of the evidence that release on personal recognizance will not reasonably assure the appearance of the defendant as required, the law still favors pre-trial release 'subject to the least restrictive further condition, or combination of conditions, that the court determines will reasonably assure the appearance of the person as required.'" *Id.* at 75; *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (emphasizing that the "requirement that courts expressly consider alternative conditions is central to the Bail Reform Act"); See *United States v. Hansen*, 108 F. App'x 331, 332 (6th Cir. 2004) ("The structure of the bail statute mandates every form of release be considered before detention may be imposed. That structure cannot be altered by building a 'guarantee' requirement atop the legal criterion erected to evaluate release conditions in individual cases") (*quoting United States v. Orta*, 760 F.2d 887, 892 (8th Cir.1985)).

When conducting its inquiry to ensure the "flight risk" is so serious that detention is required, the Court must consider the factors enumerated in 18 U.S.C. § 3142(g), including:

1. the nature and circumstances of the offense charged;
2. the weight of the evidence;
3. the history and characteristics of the person including:
   a. the defendant's character;
   b. physical and mental condition;
   c. family ties;

    d.   employment;
    e.   financial resources;
    f.   length of residence in the community;
    g.   community ties;
    h.   past conduct;
    i.   history relating to drug or alcohol abuse;
    j.   criminal history;
    k.   record of appearance at court proceedings;
    l.   whether at the time of the current offense or arrest the defendant was on probation, parole or other pretrial release, sentencing, appeal or completion of a sentence; and
    m.  the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

The Ohio pretrial services report in the above captioned matter, recommends that the defendant be released on bond. Primarily, that recommendation is based upon evaluation of the above factors and the fact that the defendant has been an upstanding citizen in his community. He has overwhelmingly strong family and community ties. (*See* Exhibit A). He has worked in the same job for decades. He has no prior convictions and no history of drug and alcohol abuse. He has no history of non-appearance in court. He was not on probation, parole, or other pretrial release at the time these charges were brought and there's no reliable evidence that he would be a danger to community if he is in fact released on bond.

To the extent the Government intends to rely on an unsubstantiated risk of Mr. Nshimiye tampering with witnesses or otherwise obstructing justice – those arguments are based solely on conjecture and surmise – and cannot be the basis for detention. In reviewing the application for bail pending appeal by members of the American Communist Party convicted under the Smith Act, 18 U.S.C. 2385, Justice Jackson addressed this same concern years ago, writing:

> Grave public danger is said to result from what [the defendants] may be expected to do, in addition to what they have done since their conviction.  If I assume that defendants are disposed to commit every opportune disloyal act helpful to the communist countries, it is still difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but as yet uncommitted crimes, **<u>Imprisonment to protect society from predicted but unconsummated</u>**

**offenses is…unprecedented in this country and fraught with danger of excesses and injustice**…"  (Emphasis added).

*Williamson v. United States*, 95 L.Ed.2d 1379, 1382 (1950). Any argument by the Government that Eric may obstruct justice or in some other way become a danger to the community, is no more than the anticipated wrongdoing warned against in Justice Jackson's famous opinion. Furthermore, any such risk can readily be abated with appropriate protective orders.

## Release on Conditions

The statute suggests 14 (fourteen) conditions of release which the court may impose, including permission to impose "any other condition that is reasonably necessary to assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(c)(1)(B) (xiv). House arrest is a permissible condition of release. Curfew restrictions and limitations on the operation of a vehicle, travel, and communication are all authorized.

The United States Supreme Court in *United States v. Montalvo-Murillo*, stated as follows: "[I]t is well to remember the magnitude of the injury that pretrial detention inflicts and the departure that it marks from ordinary forms of constitutional governance. Executive power to detain an individual is the hallmark of the totalitarian state." *United States v. Montalvo-Murillo*, 495 U.S. 711, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990) (Justice Stevens, dissent.). "It is not a novel proposition that the bail clause plays a vital role in protecting the presumption of innocence." *Salerno*, 481 U.S. at 766.

The fundamentally important nature of bail has been described by the United States Supreme Court as:

> The traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. *See Hudson v. Parker*, 156 U.S. 277, 285 (1895). Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

*Stack v. Boyle*, 342 U.S. 1, 4 (1951).

In view of these fundamental interests, the bail set must be reasonable, not in an amount intended to result in the defendant's pretrial incarceration:

> It would be unconstitutional to fix excessive bail to assure that a Defendant will not gain his freedom. *Stack v. Boyle*, 342 U.S. 1, 96 L.Ed. 3, 72 S.Ct. 1. Yet in the case of an indigent defendant, the fixing of bail in even a modest amount may have the practical effect of denying him release. *See* Foote, Forward: Comment on the New York Bail Study, 106 U. of Pa. L.Rev. 685; Note, 106 U. of Pa. L. Rev. 693; Note, 102 U. of Pa. L. Rev. 1031. The wrong done by denying release is not limited to the denial of freedom alone. That denial may have other consequences. In case of reversal, he will have served all or part of his sentence under an erroneous judgment. Imprisoned, a man may have no opportunity to investigate his case, to cooperate with his counsel, to earn the money that is still necessary for the fullest use of his right to appeal.

*Bandy v. United States*, 81 S.Ct. 197, 198 (1960) (Douglas, J. opinion by single justice in chambers on application for release).

Thus, as has been noted in the context of the Federal Bill Reform Act, even when the crime charged is serious, the amount of bail "should not be used as an indirect, but effective, method of ensuring continued custody," since:

> [T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all. Conditions which are impossible to meet are not to be permitted to serve as devices that thwart the plain purpose of the [Bail Reform] Act, nor are they to serve as a thinly veiled cloak for preventative detention.

*United States v. Leisure*, 710 F.2d 422, 425 (8th Cir. 1983) ($2 million cash bail set in racketeering case excessive in view of defendant's family ties, long term residence in community, and history of appearance in court when required); *see also Ex parte Goosby*, 685 S.W.2d 440, 441 (Tex. Ct. App. 1985) ($250,000 bail bond on each of four capital murder indictments excessive and must be reduced; "bail should not be used as an instrument of oppression").

9

Pretrial release is also critical to counsel's ability to provide effective assistance of counsel, as well as the defendant's ability to meaningfully contribute to his defense. The Sixth Amendment "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' and who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor'" *Faretta v. California*, 422 U.S. 806, 819 (1975).

The assistance of counsel during the period of pretrial preparation is indispensable to a defendant's ability to obtain a fair trial, as the Supreme Court has recognized: "the assistance of counsel cannot be limited to participation in a trial; to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton*, 474 U.S. 159, 170 (1985). Indispensable too is the defendant's own ability to review discovery and participate in the preparation of his case for trial. Obviously, this will be a complex case with thousands of pages of discovery.  Counsel will need his client's assistance in digesting this discovery.  Mr. Nshimiye will be much more able to assist in his defense if he is in fact not housed in a prison or county jail thousands of miles away from counsel of choice pending his trial. Mr. Nshimiye has been a model citizen since his arrival in the United States. While the Government has attempted to paint him as a fugitive Rwandan war criminal, the evidence will eventually prove otherwise. Certainly, those international investigative courts and agencies tasked with tracking those responsible for the Rwandan genocide have never heard of Eric Nshimiye as even a suspect. In due time the defense intends to prove that Eric is not only presumed innocent, but is factually and legally innocent of the charged offenses.

## Conclusion

WHEREFORE, for the above and forgoing reasons, as well as any further reasons that will be presented at the detention hearing, Defendant respectfully requests that the Court grant him bond in the above-captioned matter and for such other relief as the Court deems just and equitable.

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

The undersigned counsel has conferred with the Government, who by and through AUSA John McNeil, stated that is highly unlikely that the Government will agree to release based on risk of flight and the potential for obstructive conduct.

Respectfully submitted,

/s/ Kurt P. Kerns
Kurt P. Kerns, Kansas S.C. No. 15028
KERNS LAW GROUP
328 N. Main Street
Wichita, KS 67202
Telephone: (316) 265-5511
Email: kurtpkerns@aol.com

/s/ Maksim Nemtsev
Maksim Nemtsev, Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
Telephone: (61674) 227-3700
Email: menemtsev@gmail.com
*Counsel for Defendant Eric Nshimiye*

## CERTIFICATE OF SERVICE

I hereby certify that a true and authentic copy of the above and foregoing was filed and served electronically pursuant to the CM/ECF system on April 25, 2024, on all counsel of record.

/s/ Maksim Nemtsev
Maksim Nemtsev, Mass. Bar No. 690826