**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA

v.                              No. 24-cr-10071-FDS

ERIC TABARO NSHIMIYE, a/k/a
Eric Tabaro Nshimiyimana,
            Defendant.

**ORDER ON DEFENDANT'S MOTION IN SUPPORT OF BOND**

CABELL, Chief U.S.M.J.

## I.  Introduction

On March 21, 2024, the defendant Eric Tabaro Nshimiye, a/k/a Eric Tabaro Nshimiyimana, was arrested in the Northern District of Ohio ("the Ohio court") on a criminal complaint issued by this court charging him with violations of:  18 U.S.C. § 1623(a) (perjury); 18 U.S.C. §§ 1503, 2 (obstruction of justice and aiding and abetting); and 18 U.S.C. § 1001(a)(1) (falsifying, concealing, and covering up a material fact by trick, scheme, or device).  The charges stem from the defendant's purportedly false claims in connection with:  (1) his May 1995 application for classification as a refugee in this country; (2) his March 1997 application for permanent residency; and (3) his 2001 application for United States citizenship.  The perjury and obstruction of justice charges

pertain to his trial testimony in *United States v. Teganya*, 1:17-cr-1-292-FDS.  (D. 1-1, ¶¶ 35-36).  The backdrop for all of the charges is the defendant's allegedly active role in the 1994 genocide and persecution of Tutsis in Rwanda.  (D. 1-1).

On March 26, a grand jury indicted the defendant.  Three days later, a Magistrate Judge in the Ohio court conducted a detention hearing.  In a ruling made in open court, she detained the defendant pending trial based on the absence of conditions that will reasonably assure the defendant's appearance.  (D. 22-1).  Having waived an identity hearing and agreed to be transferred to this court (D. 22-1, p. 6) (D. 6), the defendant presently moves for pretrial release in a motion for a bond.  (D. 18).

On April 30, this court conducted a hearing on the motion.[1]  During that hearing, the defendant confirmed that he is seeking to reopen the matter of detention considered by the Magistrate Judge in Ohio to this court, as opposed to seeking an appeal of the decision to this court.[2]  In furtherance of reopening and reconsidering detention, the defendant identified five properties

---

[1] At the hearing, this court determined that the Magistrate Judge's decision was not limited to the defendant's detention traveling to the District of Massachusetts.  Rather, the decision included the defendant's pretrial detention thereafter.

[2] Hence, the untimeliness of any appeal, as argued by the government (D. 20) and disputed by the defendant (D. 25), and the merits of such an appeal are not before this court.

that his friends and family are willing to post to secure an appearance bond.[3]  (D. 18, p. 2) (D. 25, p. 3).

Citing *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991), the government argues in opposition that information regarding the offer of additional surety was available at the time of the detention hearing and was capable of being known using reasonable diligence.  (D. 20, pp. 4-6).  Thus, per the government's argument, this is not a situation where "information exists that was not known to [the defendant] at the time of the [detention] hearing" to justify reopening under 18 U.S.C. § 3142(f) ("section 3142(f)").  (D. 20, pp. 4-6) (quoting and discussing section 3142(f)).  For the following reasons, the government is correct, and the motion (D. 18) is accordingly denied.

## II.  Proceedings in Ohio

At the defendant's March 21 initial appearance in Ohio, the government moved for detention based on risk of flight, danger to the community, and obstruction of justice.  (D. 22-1, p. 9) (D. 20, p. 2).  The Magistrate Judge appointed counsel to represent the defendant ("defendant's Ohio counsel").

Eight days later, she conducted the detention hearing.  Prior to the hearing, the defendant provided the court approximately 70 letters from his family, friends, community members, coworkers,

---

[3] He is also willing to post his residence.  (D. 18, p. 2).

and others.  (D. 18-1).  In the context of acknowledging these letters, the Magistrate Judge described an "outpouring of support" by what she saw in the courtroom.  (D. 22-1, p. 36).  The defendant's Ohio counsel portrayed the courtroom as at record capacity.  (D. 22-1, p. 13).

Importantly, at the outset of the detention hearing, the defendant and the government stated they had had an adequate opportunity to prepare for the hearing.  (D. 22-1, p. 8).  The parties proceeded by way of proffer and affirmed their receipt of a pretrial services report ("PSR").  The PSR recommended the defendant's release on a $20,000 unsecured bond.  Citing this recommendation, the defendant asked the Magistrate Judge to impose an unsecured bond.  (D. 22-1, p. 32).  The government argued for a bond secured by the defendant's house in the event the Magistrate Judge decided to release the defendant.  (D. 22-1, p. 19).  During the detention hearing, the defendant's Ohio counsel represented that the defendant's wife and nephew were willing to serve as third-party custodians.  (D. 22-1, pp. 14-15).

As indicated, the Magistrate Judge determined that "no conditions will reasonably assure [the defendant's] appearance." (D. 22-1, p. 42).  She identified several conditions recommended by pretrial services that she considered and rejected.  (D. 22-1, p. 41).  She did not mention a bond secured by the property of the defendant's friends and family or by the defendant's residence.

### III.   **The Parties' Arguments**

As indicated previously, the government argues that the defendant fails to satisfy section 3142(f) because there were facts capable of being known about the offer of additional surety at the time of the detention hearing by exercising reasonable diligence. (D. 20). The government also argues that a decision to reopen the hearing and conduct a further hearing is discretionary. (D. 20). The defendant responds "that none of the newly available collateral was previously available, offered, or evaluated by [the] Magistrate Judge." (D. 25, p. 5). He also argues "there was little reason to explore additional" collateral "after pretrial services recommended release on [the] $20,000 unsecured bond." (D. 25, p. 3).

### IV.   **Legal Analysis**

Section 3142(f) provides, in pertinent part, that a detention:

> hearing may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). "The rationale for the rule is to encourage a party to be diligent in bringing forth all material evidence the first time a hearing is held and discourage piecemeal presentations

or prolonged proceedings absent a demonstrated legitimate reason for not presenting the evidence."

*United States v. Fordham*, Case No. 3:22-cr-109-1, 2022 WL 2898912, at *4 (M.D. Tenn. July 21, 2022) (citation omitted).

The First Circuit interprets information "not known to the movant at the time of the hearing," 18 U.S.C. § 3142(f), as excluding information about the evidence that was available to the defendant at the time of the detention hearing even if the evidence itself did not yet exist. *See Dillon*, 938 F.3d at 1415 (quoting section 3142(f) and affirming district court's rejection of letters and affidavits offered after hearing even though not in existence at time of hearing).[4] In *Dillon*, the defendant sought to reopen the detention hearing to offer 18 affidavits, seven letters, and an offer by his father "to post his three-family house as security." *Id.* Even though "the letters and affidavits themselves were not in existence at the time of the [detention] hearing," the First Circuit affirmed the district court's decision not to reopen the detention hearing under section 3142(f). *Id.* The court pointed out "that 'numerous relatives and friends' of [the defendant] had shown up for the hearing . . ., lending support

---

[4] In contrast, a relevant judicial ruling that is made after a detention hearing may allow reopening the detention hearing. *See id.* (citing *United States v. Peralta*, 849 F.2d 625, 626-627 (D.C. Cir. 1998), as upholding reopening "detention hearing when government sought to put in evidence of a ruling adverse to defendant, on a suppression motion entered *after* original detention hearing").

to the court's finding that the *information* contained in the affidavits and letters was indeed *available* to appellant at the time of the hearing." *Id.* (second emphasis added).

Similarly here, the information regarding the sureties, their properties, and their willingness to collateralize them was available to the defendant at the time of the detention hearing. To explain, two of the individuals offering to post their properties wrote two of the 70 letters supporting the defendant. (D. 18-1, pp. 31-32, 52) (D. 25, p. 3).[5]  The government represented, and the defendant did not dispute, that these two individuals are the defendant's brother and nephew.  The government identified another individual as the defendant's uncle and portrayed him as fully engaged in the Ohio proceedings.[6]  The defendant, in turn, described the sureties, including the remaining two individuals, as the defendant's "friends and family members." (D. 25, p. 3).  Moreover, the defendant's Ohio counsel described the courtroom during the detention hearing as at "record capacity" and observed that:

> From [his] understanding, there are people who are not able to enter the courtroom because we do not have room for them.  As many people that can fit into [the] courtroom are here to support Mr. Nshimiye.

_____

[5] One couple and four individuals each offered to post one property.  (D. 25, p. 3).  For ease of reference, the court refers to five as opposed to six individuals.

[6] Again, the defendant did not dispute the government's representation.

(D. 22-1, p. 13).  It therefore stands to reason that the defendant not only knew these five relatives and friends, but he also knew (or had information available) of their support and their willingness to post their properties as security.  Indeed, a court in this district concluded that a belated offer to post two properties to support an appearance bond was not "previously nonexistent information" and, consequently, failed to warrant reopening the detention hearing.  *See, e.g.*, *United States v. Mateo Soto*, Criminal No. 16-10350-RGS, 2017 WL 3705797, at *1-2 (D. Mass. Aug. 25, 2017) (discussing *Dillon* and rejecting proposal of properties as security for appearance bond as warranting reopening under section 3142(f)); *id.* (further stating, "Defendant has not shown that the properties or the willingness of their owners to post them is previously nonexistent information" under section 3142(f)).

Furthermore, like the willingness of the defendant's five relatives and friends to post their properties as security, the defendant's father in *Dillon* "offered to post his three-family house as security" after the detention hearing.  *Dillon*, 938 F.2d at 1415.  Nonetheless, the court found no error with the district court's decision not to reopen the hearing.  *Id.*

Separately, as aptly pointed out by the government, the defendant had more than a week to prepare for the detention hearing.  Pertinent to this point, the First Circuit in *Dillon*

8

noted that, as pointed out by the district court, "[the defendant] had had sufficient time to obtain the affidavits and letters." *Dillon*, 938 F.2d at 1415.  In *Dillon*, there was a nine-day period between the time the government moved for detention and the magistrate judge conducted the detention hearing.  The defendant therefore had enough time to obtain the 18 affidavits and seven letters authored by the defendant's friends, family members, a police officer, a former hockey coach, and a pastor.  *Id.*  In like fashion here, the defendant had sufficient time (eight days) to obtain the offers from the five sureties by the time of the detention hearing.

In sum, the offers of the five individuals to post their residences as collateral is not new information within the meaning of section 3142(f).  More precisely, this court fails to find "that information exists that was not known to the movant at the time of the hearing."[7]  18 U.S.C. § 3142(f).  The defendant's argument "that none of the newly available collateral was previously available" (D. 25, p. 5) is therefore not convincing.

The defendant's other arguments fail to persuade.  The defendant primarily argues that he had "little reason to explore

---

[7] In light of the court's conclusion that there was available information, it is not necessary to address the government's argument that a decision to reopen the detention hearing is discretionary.  Even assuming dubitante that reopening is mandatory, the language conditions a reopening upon a finding that information exists that was not known to the defendant.  18 U.S.C. § 3142(f) ("The hearing *may* be reopened . . . *if* the judicial officer finds that information exists that was not known to the movant at the time of the hearing . . . .") (emphasis added).

additional available collateral . . . after pretrial services recommended" an unsecured $20,000 bond.  (D. 25, p. 3).  The recommendation, however, does not directly bear upon whether information exists about the five sureties' offers "that was not known to the [defendant] at the time of the [detention] hearing." 18 U.S.C. § 3142(f).  Similarly, the argument that the defendant, in essence, did not need to explore available collateral is distinct from whether the information was available.

The defendant also argues that the Magistrate Judge in Ohio "did not consider any available collateral in reaching her decision." (D. 25, p. 4).  The government, however, argued there that, if the Magistrate Judge was considering release, she should require a bond secured by the defendant's residence.  The fact that she did not reference and reject a secured bond or collateral in her decision does not mean she did not consider available collateral.  Even assuming she did not consider available collateral, this court would still not find "that information exists that was not known to the [defendant] at the time of the [detention] hearing."  18 U.S.C. § 3142(f).

The defendant's arguments challenging the Magistrate Judge's decision that he posed a risk of nonappearance and that pretrial detention was not necessary implicate the merits of the detention decision.  (D. 18).  This court's finding that information exists

that was known to the defendant within the meaning of section 3142(f) pre-terminates this inquiry into the merits.

As a final matter, the defendant filed a notice of supplemental authorities. (D. 29). Having considered the cited cases, they are unpersuasive. The most relevant case, *United States v. Ward*, 63 F. Supp. 2d 1203, 1205, 1207 (C.D. Cal. 1999) (reopening detention hearing to consider defendant's "property to secure [defendant's] appearance" because "full extent of [defendant's] potential sureties was not fully known and available to him" at detention hearing), is distinguishable. The court in *Ward* conducted the detention hearing and detained the defendant one day after the defendant's arrest and on the same day that the government moved for detention. *Id.* Here, unlike the one-day time period in *Ward*, the defendant had sufficient time (eight days) to prepare for the detention hearing and confirmed having adequate time to prepare for that hearing in open court. *See United States v. Martin*, Case No. 13-cr-00466-JSW-2 (KAW), 2015 WL 3464937, at *3 (N.D. Cal. May 29, 2015) ("[U]nlike in *Ward,* where the detention hearing was held a day after the defendant was arrested, here, Defendant had sufficient time to ascertain his sureties prior to his detention hearing.").

## V. Conclusion

Per the foregoing, the defendant's motion in support of bond (D. 18) is **DENIED**.

s/ Donald L. Cabell
_____
DONALD L. CABELL, Chief U.S.M.J.


DATED:  May 17, 2024