UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES of AMERICA** | ) ) ) | |
| v. | ) ) | Criminal Action No. 24-10071-FDS |
| **ERIC TABARO NSHIMIYE,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

# MEMORANDUM AND ORDER ON DEFENDANT'S MOTION
# FOR REVIEW OF PRETRIAL DETENTION ORDER

**SAYLOR, C.J.**

Defendant Eric Tabaro Nshimiye is alleged to have actively participated in the 1994 genocide of Tutsis in Rwanda, and then concealed that purported fact during testimony and in his applications for refugee status, permanent residency, and United States citizenship. Specifically, he is charged with perjury in violation of 18 U.S.C. § 1623(a); aiding and abetting the obstruction of justice in violation of 18 U.S.C. §§ 1503 and 1502; and falsifying, concealing, and covering up a material fact by trick, scheme, or device in violation of 18 U.S.C. § 1001(a)(1).

On March 21, 2024, defendant was arrested in Ohio pursuant to a warrant issued by this court. After a hearing, a magistrate judge for the U.S. District Court for the Northern District of Ohio ordered that he be detained pretrial. He was then transferred to the District of Massachusetts, and has now appealed the magistrate judge's order of detention. After careful consideration of the magistrate judge's order, the memoranda submitted by the parties, and the evidentiary record, defendant's appeal of the pretrial detention order will be denied.

I. **Background**

A. **Factual Background**

Nshimiye was born and raised in the Republic of Rwanda. He is a Hutu, which is the majority ethnic group in the country. Beginning in 1991, he attended the University of Rwanda in Butare as a medical student. While he was still a student, the Rwandan genocide began in April 1994, targeting the country's Tutsi population.

According to the government, Nshimiye participated in the Hutu political party (Movement Revolutionaire National pour le Developement ("MRND")), and engaged in the murder of multiple Tutsi men, women, and children, and the rape of several Tutsi women during the genocide in 1994.

At some point in 1994, Nshimiye fled Rwanda to Kenya, where he applied to become a refugee to the United States. That application was granted, and he was admitted to the United States as a refugee in December 1995. He became a permanent resident in 1998, and then a United States citizen in 2003. At each of those steps in the immigration process, he allegedly made false statements to authorities about his involvement in the atrocities in Rwanda.

In April 2019, Nshimiye testified in a trial before this court against another defendant, who was charged with committing perjury and making false statements to immigration authorities about his own involvement in the Rwandan genocide. *United States v. Teganya*, No. 17-cr-10292-FDS (D. Mass. 2017). During that testimony, Nshimiye allegedly made further false statements about his involvement in the genocide. Agents from Homeland Security Investigations ("HSI") also interviewed Nshimiye at his home in Akron, Ohio, in March 2024. During that interview, he repeated the allegedly false statements about his actions in Rwanda.

On March 15, 2024, a warrant was issued for Nshimiye's arrest by this court, and three days later, he was arrested in the Northern District of Ohio.

### B. Procedural Background

At Nshimiye's initial appearance in Ohio, the government moved for pretrial detention. The indictment was unsealed on March 26, 2024.

A detention hearing was held on March 29, 2024, before a magistrate judge for the U.S. District Court for the Northern District of Ohio. That magistrate judge determined that although the government had not met its burden to show "by clear and convincing evidence that there is no condition that will reasonably assure the safety of other persons in the community," it had "prov[ed] by a preponderance of the evidence that no condition will reasonably assure the defendant's appearance," and accordingly ordered him detained pending trial. *United States v. Nshimiye*, No. 24-mj-06106, ECF No. 9 at 38, 42 (N.D. Ohio Apr. 27, 2024). Defendant was then transferred to the District of Massachusetts. The Court referred the case for full pretrial proceedings to Chief Magistrate Judge Donald L. Cabell.

After the transfer, defendant moved for bond requesting, in essence, that this court reopen the order of detention issued by the magistrate judge in Ohio. Along with reiterating the original factors supporting release, he asserted that detention proceedings should be reopened based on newly available collateral that might assure his future appearance. On May 17, 2024, Magistrate Judge Cabell denied the motion because that collateral was known to defendant at the time of the first detention hearing, and thus was not ground for reopening detention proceedings under 18 U.S.C. § 3142(f).

Defendant now seeks review of the detention order from the U.S. District Court for the Northern District of Ohio to this court pursuant to 18 U.S.C. § 3145(b).[1]

---

[1] Defendant does not challenge the decision of Magistrate Judge Cabell declining to reopen proceedings because the purported newly available surety was known to defendant at the time of the earlier proceedings. Accordingly, any additional surety that was not offered during the first detention hearing is not part of the record for which defendant seeks review, and will not impact the Court's analysis here.

3

II.     **Standard of Review**

The district court has jurisdiction to review an order of detention upon motion of the person detained. 18 U.S.C. § 3145(b). Where, as here, a detention decision was made in the district of arrest, the statutory authority for review of that decision is with the district court where the prosecution is pending. *United States v. Godines-Lupian*, 816 F. Supp. 2d 126, 128 (D.P.R. 2011). Upon the defendant's motion, the court reviews legal conclusions and contested findings supporting release *de novo*. *United States v. Tortora*, 922 F.2d 880, 883 n.4 (1st Cir. 1990).

The Bail Reform Act provides two avenues by which a defendant may be subject to a detention hearing—either in circumstances involving specific types of criminal conduct, or where there is either "a serious risk that [the defendant] will flee," or that he "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. §§ 3142(f)(1), (2). As a threshold matter, the charged offenses here are not included in § 3142(f)(1), thus the government bears the burden to show a serious risk of either flight or obstruction of justice under § 3142(f)(2).

If a hearing is authorized, a judicial officer may order a defendant detained pending trial if the government can establish (1) by clear and convincing evidence that a defendant is a danger to the community, or (2) by a preponderance of the evidence that a defendant poses a serious risk of flight. 18 U.S.C. §§ 3142(e)-(f); *see United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991); *see also United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991). If the government meets that initial burden, a defendant may be detained only if the judicial officer determines that "no condition or combination of conditions . . . will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). In making that determination, the court must consider the nature and circumstances of the offense charged, the weight of the evidence against the person, the history

4

and characteristics of the defendant, and the nature and seriousness of the danger posed by their release.  18 U.S.C. § 3142(g).

### III.   Analysis

Again, the magistrate judge determined that the government met its burden to show by a preponderance of the evidence that defendant posed a serious risk of flight under § 1342(f)(2), and that no condition or combination of conditions would adequately assure his future appearance under § 1342(e).[2]  Defendant challenges both determinations.[3]

####   A.   Risk of Flight

#####     1.   Nature and Circumstances of Offense

The first issue is the nature and circumstances of the charged offenses.  As discussed, defendant is directly charged with perjury, aiding and abetting the obstruction of justice, and covering up a material fact.  None of those offenses are classified as warranting a rebuttable presumption of detention.  18 U.S.C. § 3142(e)(3).  However, those charges suggest a pattern of concealment and false statements, particularly where (as here) they were allegedly made to secure defendant's flight from Rwanda, where presumably he might have faced substantial consequences for his purported involvement in acts of violence committed there.

Moreover, considering the circumstances of the charged offenses more broadly, the foundation of the government's case is that defendant committed multiple serious, violent offenses during the Rwandan genocide—including the murders of multiple men, women, and children, and the rape of several women.  For the government to prevail, it will be required to

---

[2] Defendant's risk of flight is relevant both to the threshold determination under § 1342(f)(2) and to the detention decision under § 1342(e).

[3] The government also contends that defendant poses a danger to the community under § 1342(e).  As explained below, because the Court affirms the magistrate judge's decision on the ground that no condition or combination of conditions would reasonably assure defendant's appearance, there is no cause to reach that issue.

5

introduce some evidence of the truth or falsity of those offenses. Defendant has also allegedly shown a strong motivation and ability to avoid punishment for any of that criminal conduct in Rwanda since 1994. The severity of those actions and their possible consequences, therefore, do bear on the risk that defendant might seek to flee once again.

Given the allegations involving false statements, and the severity of the criminal conduct that defendant allegedly concealed over several years, this factor favors detention.

### 2. Weight of the Evidence

Second, the weight of the evidence against defendant favors detention. Again, to support allegations of perjury and false statements, the government must present evidence that some or all of defendant's statements about his involvement in the Rwandan genocide were false. In support of its allegations, the government offers an affidavit from an HSI agent that recounts the statements of four witnesses who claim that defendant was a member of the MRND and was actively involved in multiple rapes and murders during the atrocities in Rwanda. (Langille Aff., Gov. Ex. A ¶¶ 14-21). Two witnesses—who were themselves participants in the genocide—reported seeing him murder a 14-year-old Tutsi boy and his mother. (*Id.* ¶¶ 18-19). A third witness asserted seeing him murder another person. (*Id.* ¶ 20). A fourth witness asserts that she was directly and repeatedly sexually abused by him. (*Id.* ¶ 21). Any of those acts, if true, would contradict defendant's statements before this court and immigration authorities.[4]

On balance, the statements of four eyewitnesses to defendant's alleged conduct in Rwanda, together with multiple documented statements to officials denying any such conduct, is sufficient evidence to favor detention.

---

[4] The government also relies on the fact that Nshimiye's prior testimony before this court—which forms the basis of the perjury charge—was implicitly rejected by the jury in that proceeding. It is unclear what, if any, weight that implication should hold here.

6

### 3. Defendant's History and Characteristics

As the magistrate judge noted, there is an inherent difficulty in attempting to assess the history and characteristics of a person based on their conduct over the last thirty years compared to the alleged conduct that forms the basis of the present charges. (ECF No. 9 at 37).

Defendant has submitted numerous letters from friends and family members, all of whom offer their unconditional support for his release. He appears to have been an active member of his community, held steady employment, and has no criminal history since his arrival in the United States in 1994. He also has significant family ties to the United States, including a wife and four children.

However, if the government's allegations are true, defendant has also engaged in a scheme to mislead authorities and avoid facing consequences for his acts during the Rwandan genocide over decades. That pattern would suggest a willingness to evade and escape that is highly relevant to the principal question at issue—that is, his risk of flight were he to be released. Moreover, those alleged underlying acts are extreme, and unquestionably carry significant potential penalties in Rwanda and elsewhere, and must be considered in assessing defendant's overall history and characteristics.

Taken together, the evidence establishes that defendant's history and characteristics weigh at least to some degree for detention.

### 4. Seriousness of Danger

Fourth, as the magistrate judge found, it is unclear what, if any, danger defendant would pose to others in the community were he to be released. Although his alleged conduct of 30 years ago was heinous, there is no evidence that he has committed any such acts—indeed, any criminal conduct—since 1994. This factor therefore supports release.

In total, considering all of the factors enumerated in 18 U.S.C. § 3142(g), the Court finds that the government has met its burden to establish that defendant poses a serious risk of flight were he to be released before trial in this matter.

### B. Combination of Conditions

Defendant suggests that a number of imposed conditions would eliminate any risk of his fleeing before trial. Those offered conditions include home detention, electronic monitoring, surrendering his passport, waiving non-extradition rights, surety provided by himself and several friends and family, and agreeing to supervision by pretrial services.[5]

Under the circumstances, the Court is not persuaded that any of the proposed conditions of release are sufficient to reasonably assure defendant's appearance. In particular, as the magistrate judge noted, the circumstances here mean that defendant's required travel between Ohio and Massachusetts creates a substantial risk that he might take the opportunity to evade authorities while in transit. Accordingly, defendant's motion will be denied.

## IV. Conclusion

For the foregoing reasons, defendant's appeal of the pretrial release order as to defendant Eric Tabaro Nshimiye is DENIED. The Court hereby orders that defendant remain detained pending trial of this matter.

**So Ordered.**

Dated:  June 20, 2024

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

---

[5] As discussed, the present motion does not challenge the decision of the magistrate judge not to reopen proceedings under 18 U.S.C. § 1342(f).