UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Docket No. 1:24-cr-10071-FDS |
| ERIC TABARO NSHIMIYE, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO
PROCEED EX PARTE AND UNDER SEAL FOR
ISSUANCE OF LETTERS ROGAGORY**

The United States of America, by and through undersigned counsel, hereby submits this

opposition to *Defendant's Motion For Leave To Proceed Ex Parte And Under Seal For Issuance*

*Of Letters Rogatory*. [D.55].  Through his motion, the defendant seeks to use an *ex parte* sealed

process to: 1) persuade this Court to exercise its discretion in issuing letters rogatory to one or

more foreign courts or international bodies without any opportunity for opposition briefing

(either from the U.S government or from the foreign entity in the receiving country); 2) use a

private investigator or attorney in a foreign country to execute this Court's letters rogatory,

intentionally keeping such process invisible to the United States government (which may have

diplomatic or legal equities in the issue) and immune from any oversight by this Court; 3)

directly obtain from a foreign court or international body evidence under seal without such

evidence being produced to this Court or the government; and 4) only disclose to the government

that evidence which the defendant independently concludes falls under Fed.R.Crim.P. 16.

In short, the defendant is seeking to employ the authority of this Court to engage in *ex*

*parte* discovery and conduct a secret investigation in one or more foreign countries.  The

1

government suspects, but cannot confirm, that this effort is largely aimed at obtaining impeachment material for use in cross-examination.  The Supreme Court has already concluded that this is an improper use of compelled production of evidence.  *See, United States v. Nixon*, 418 U.S. 683, 701 (1974).  For that reason, and those set forth below, the Court should deny his motion to proceed *ex parte* and under seal.

    **I.**    **The Defendant fails to cite a single case in which a Court has permitted an *ex parte* application for letters rogatory.**

The defendant fails to cite, and the government has not located, a single case, statute, or applicable treaty which provides authority for a defendant to request, and a court to grant, an *ex parte*, under seal application for letters rogatory.  Not one of the cases cited by the defendant has held, much less suggested, that it is lawful (under either domestic or foreign law), or advisable in a criminal case, for a court in the United States to exercise its authority to engage in the process proposed by the defendant as outlined above.  The absence of such a precedent is particularly striking because letters rogatory have been used by courts in this country for more than two centuries.  *See, e.g. Nelson v. U S*, 17 F. Cas. 1340, 1341 (C.C.D. Pa. 1816) (court issued letters rogatory to Havana to obtain evidence on the origin of a shipment of rum).   During that same period, there is ample precedent for the transparent use of letters rogatory in civil cases and the similarly transparent use of letters rogatory to take criminal depositions overseas.  *See, e.g. Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1273 (11th Cir. 2015) (discussing use of letters rogatory in civil and criminal cases);  *United States v. Steele*, 685 F.2d 793, 809 (3d Cir. 1982) (use of letters rogatory to conduct a deposition in criminal case); *United States v. Trout*, 633 F. Supp. 150, 151 (N.D. Cal. 1985)(a court may issue letters rogatory to obtain deposition testimony in a criminal case pursuant to Fed.R.Crim.P. 15 and Fed.R.Civ.P. 28(b)(3)).

2

The absence of a precedent for the *ex parte* use of letters rogatory in a criminal case is unsurprising.  First, there is no statute expressly authorizing the use of letters rogatory in a criminal case except in the case of a Rule 15 deposition.  See Fed.R.Crim.P. 15(e) and Fed.R.Civ.P. 28(b).  While the defendant has suggested that the Court's authority to issue letters rogatory for documents in a criminal case arises from 28 U.S.C. §1781, the text of that statute belies such a claim.  Section 1781 empowers the Department of State to receive and transmit letters rogatory; it does not independently authorize criminal courts in the United States to issue such letters rogatory. 28 U.S.C. §1781(a).   Rather, Section 1781(b)(2) simply notes that nothing in Section 1781(a) "precludes . . .the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom is addressed . . ."   28 U.S.C. §1781(b).  Thus, any authority to issue letters rogatory in a criminal case by a U.S. court arises from the inherent powers of the Court rather than from statutory authority.  *See, e.g. United States v. Reagan*, 453 F.2d 165, 173 (6th Cir. 1971); 22 C.F.R. § 92.54 ("In United States usage, letters rogatory have been commonly utilized only for the purpose of obtaining evidence. Requests rest entirely upon the comity of courts toward each other, and customarily embody a promise of reciprocity").   Moreover, while the United States is party to an international treaty related to letters rogatory, that treaty does not provide for *ex parte* submission of requests.  *See Hague Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters,* Nov. 15, 1965; T.I.A.S. No. 6638 (Entered into Force Feb. 10, 1969); *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 536 (1987) (discussing treaty's use in a civil case).  In

addition, that treaty is applicable **only** to civil and commercial matters; it is not applicable to criminal matters. *Id.*

The absence of any precedent authorizing the *ex parte* use of letters rogatory in a criminal case is also unsurprising because the letters rogatory process necessarily invokes the powers of a foreign court, potentially involves foreign law enforcement officials (to execute requests for information or conduct interviews overseas), and is constricted by the foreign law which binds the foreign court and foreign law enforcement officials. Once a U.S. Court sends letters rogatory to a foreign court, the U.S. court has no authority to compel the foreign court to keep that request under seal or otherwise control the *ex parte* nature of it. Foreign courts and foreign law enforcement officials may have an obligation publish notice of their actions, confer with their Ministry of Justice, to provide notice to all interested parties (potentially including diplomatic officials), or to engage in a fully open and transparent process in deciding how to execute the request. As this Court is aware, the many mutual legal assistance treaties ("MLATs") entered into by the United States and its international partners address the issue of confidentiality by expressly providing that a requesting party may request that a criminal matter be kept confidential. *See, e.g. Treaty Between the Government of the United States and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters, U.S.–U.K.*, Dec. 2, 1996, S. Treaty Doc. No. 104–2 at Article 7 ("Confidentiality and Limitations on Use"); *Agreement on Mutual Legal Assistance Between the United States of America and the European Union, U.S.–E.U.*, June 25, 2003, S. Treaty Doc. No. 109–13 at Article 10 ("Requesting State's request for confidentiality"). Through these express bilateral MLATs, courts and other officials in the receiving country are bound to keep an MLA

request under seal. *Id.* By contrast, in the letters rogatory process, nothing permits or requires a receiving country to keep matters under seal. It cannot be the case that an *ex parte* request for letters rogatory must remain under seal in the United States while it could be freely available in a foreign country.

## II.    The defendant's analogy to Fed.R.Crim.P. 17(c) subpoenas is fundamentally flawed.

The defendant's analogy to the issuance of a subpoena under Fed.R.Crim.P. 17(c) provides no support for his novel request. First, there are a substantial number of courts which have concluded that a Rule 17(c) subpoena may not be applied for, or issued, *ex parte*. For instance, Judge Coughenour in the Western District of Washington recently wrote:

> [Rule 17(c)] itself contemplates that the court "may" permit inspection by the parties of documents produced before trial, it follows from a plain reading of the Rule that this Court has discretion to grant or deny an adverse party the opportunity to inspect sealed documents. In other words, Rule 17(c), by its own terms, is permissive, providing that the court "may" order production of documents and "may" permit inspection by the adverse party. In *United States v. Urlacher*, 136 F.R.D. 550, 555–58 (W.D.N.Y. 1991), the Court addressed the impropriety of compelling an *ex parte* request, stating there "can be no "right" to *ex parte* procurement of subpoenaed documents pretrial if the court has discretion to supervise their production by permitting both parties inspection prior to trial." *United States v. Urlacher*, 136 F.R.D. 550, 556 (W.D.N.Y. 1991). The Court's reasoning, adopted here, is consistent with leading treatises which have concluded that, "[i]f a [Rule 17(c)] Motion is made it cannot be *ex parte*." 2 Wright, Federal Practice and Procedure: Criminal § 274 at p. 46 of 1995 Pocket Part; *see also, United States v. Hart*, 826 F. Supp. 380, 381 (D. Colo. 1993) (Rule 17(c) negates any assumption that production should be on an *ex parte* basis).

> While the Court understands Defendant's concern regarding his strategy, such a concern is misplaced. Rule 17(c) expressly contemplates the shared review of documents subpoenaed by other parties to the dispute. Accordingly, Defendant's purported "right" to proceed *ex parte* is premised on a misunderstanding of the overarching purpose of Rule 17(c), which is to serve the ends of shared pre-trial discovery, not secrecy. Lastly, The Court notes that, in its view, the evidentiary documents do not, even inferentially, disclose Defendant's litigation strategy.

*United States v. Garg*, 2024 WL 37047, at *2 (W.D. Wash. Jan. 3, 2024).  *Garg* followed a long

line of cases finding that it was impermissible to issue Rule 17(c) subpoenas *ex parte*.  *See*,

*United States v. Steward*, 1997 WL 103700 (E.D. Pa. Mar. 4, 1997) ("A majority of courts have

refused to allow an *ex parte* application under Rule 17(c)" *collecting cases*).  While most of

these courts relied on the language of Rule 17(c) to decline *ex parte* applications for document

subpoenas, many have also noted that the purpose of Rule 17 is to obtain **admissible evidence**,

not to conduct discovery, or to engage in a "fishing expedition."  *See Nixon*, 418 U.S. at 698-699

(1974) (Rule 17(c) subpoenas are "not intended to provide a means of discovery for criminal

cases" and the moving party must show, "(1) that the documents are evidentiary and relevant; (2)

that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;

(3) that the party cannot properly prepare for trial without such production and inspection in

advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the

trial; and (4) that the application is made in good faith and is not intended as a general 'fishing

expedition.'").  It should also be noted that "material that would only be used for impeachment is

insufficient to meet the Rule 17(c) requirements."  *United States v. Weisberg*, 2010 WL

5027537, at *1 (E.D.N.Y. Dec. 3, 2010) *citing Nixon*, 418 U.S. at 701 ("Generally, the need for

evidence to impeach witnesses is insufficient to require its production in advance of trial").  As a

result, *ex parte* letters rogatory cannot be used to gather surprise impeachment material for use in

cross-examination at trial.[1]

---

[1] The defendant also makes the sweeping claim that he has a constitutional right to conceal from the government the nature of his defense as well as who his witnesses may be or what documents he may introduce at trial.  As the Supreme Court concluded in *Williams v. Fla.*, 399 U.S. 78, 81-82 (1970), "[t]he adversary system of trial . . . is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played" and "[n]othing

Second, even if this Court were to decide, as some courts have, that a Rule 17(c) subpoena may be sought *ex parte* in exceptional circumstances*,* such a conclusion would not equally apply to an application for letters rogatory. [2]  When a Rule 17(c) subpoena is granted *ex parte*, the issuing court has the authority to enforce any sealing order entered at the time it grants the motion for a subpoena.  The court could enforce the *ex parte* nature of the request on parties in the United States through its contempt authority.  *See* 18 U.S.C. §401(3).  By contrast, this Court would have no such authority over foreign officials or the entities in a foreign country ordered to produce documents and other evidence.

Similarly, when a Rule 17(c) subpoena is served in the United States the recipient may move to quash that subpoena.  *See* Fed.R.Evid. 17(c)(2) ("On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive"); *Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000) (discussing motions to quash under Rule 17(c)).   This Court can ensure that the party ordered to comply with a Rule 17(c) subpoena is afforded some due process and the subpoena is not unduly burdensome.  *Id.*  Again,

---

in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense."  For instance, the federal rules require early disclosure of all types of defenses substantially before trial without running afoul of a purported constitutional right to conceal a "defense strategy."  Alibis (the most obvious defense in this case because the defendant testified at Teganya's trial that he was not in Butare during the genocide), insanity, and public authority defenses must be disclosed long before trial.  *See* Fed.R.Crim.P. 12.1, 12.2, and 12.3.  In addition, the defense must disclose long in advance of trial of all types of scientific examinations and tests, expert testimony, and all those defenses falling within Fed.R.Crim.P. 12(b)(3).  *See* Fed.R.Crim.P. 16(b).  The defendant's assertion of a broad constitutional right to conceal his defense until the last moment is greatly overstated and unsupported by applicable law.  *See also Garg*, 2024 WL 37047, at *2 and cases cited therein.

[2] The government acknowledges that one magistrate judge in this Court has suggested that it can be appropriate in some circumstances to issue a Rule 17(c) subpoena *ex parte*.  *See United States v. Colburn*, 2020 WL 6566508 (November 9, 2020). However, in that case the Court noted that the government did not object to the use of an *ex parte* process, so the issue was not litigated. *Id*. at *2. In addition, the Court acknowledged that many courts did not permit the *ex parte* use of Rule 17(c), but rejected that line of cases with no reasoning in dicta.  *Id.* For the reasons stated in this memorandum, the dicta in *Colburn* about the appropriateness of using an *ex parte* process is incorrect. Nonetheless, the instant motion seeks the *ex parte* use of letters rogatory, an issue not before the Court in *Colburn*.

this is not the case with letters rogatory.  This Court would have no ability to directly hear from or consider the equities associated with compliance with an *ex parte* letters rogatory.  Foreign courts enforcing the letters rogatory could give the ultimate recipients limited or no due process, and insist that recipients engage in a burdensome record review process stretching back 30 years. Alternatively, foreign courts could give the ultimate recipients seemingly endless due process, with multiple appeals and the like.  Unlike the Rule 17 process, this Court would have neither insight into nor control over that process.

Moreover, the letters rogatory process is already fraught with delay.  *See Societe Nationale Industrielle Aerospatiale*, 482 U.S. at 531  (describing the letters rogatory process as "complicated, dilatory, and expensive").  It could take a year or more to receive a response to a letters rogatory.  Insisting on *ex parte* secrecy in a foreign court proceeding would render a complex process completely unworkable and potentially unfair to the ultimate overseas recipients and the government.

### III.    Defendant's proposed method of transmittal injects unnecessary uncertainty and increases the potential for corruption in foreign countries.

The defendant's additional request to use a private agent to serve the letters rogatory without any U.S. government or court oversight adds an additional layer of secrecy and uncertainty which could inject abuse or corruption into the process of obtaining reliable evidence.  Neither this Court nor the U.S. State Department would have any control over, or insight into, how a foreign agent may present or exploit a sealed official document from the United States.  A foreign actor could alter the document, engage in bribery or other forms of corruption, alter or destroy the documents produced in response to the request, all while seeming to act under color of United States law.  Moreover, if the defendant were to seek to use any of the

evidence produced in response to *ex parte* letters rogatory, the government would need to conduct its own investigation as to the authenticity and reliability of that evidence. That could cause significant additional delays.

Such concerns are not academic. For instance, the defendant may seek *ex parte* letters rogatory to be issued to the government of Rwanda to obtain records from the Gacaca tribunals. Those local tribunals were established in 2001 when it was plain that neither the International Criminal Tribunal for Rwanda nor the Rwandan judicial system was equipped to handle the many crimes committed during the 1994 genocide. *See gen. The Justice and Reconciliation Process in Rwanda, UN Outreach Programme on the Rwandan Genocide* at https://www.un.org/en/preventgenocide/rwanda/assets/pdf/Backgrounder%20Justice%202014.pdf . These grassroots community tribunals were as much about reconciliation as they were about fairly adjudicating criminal conduct. *Id.*; Paul C. Bornkamm, *Transitional Justice Through Reparation*, Oxford Academic (January 2012) https://academic.oup.com/book/5683/chapter/148771826 (". . . the 'de-professionalization' of investigation and prosecution, and the ensuing arbitrariness of the proceedings weaken the persuasive power of fact-finding by Gacaca courts and undermine their capacity to recover the truth.") While handwritten notes of those proceedings were often kept, there is substantial doubt about the completeness of those notes and how they have been maintained since the tribunals shut down in 2012. *Id.*; Anuradha Charkravarty, *The Gacaca Court: Deciding Innocence and Guilt*, Cambridge University Press (November 2015) https://www.cambridge.org/core/books/investing-in-authoritarian-rule/gacaca-court-deciding-innocence-and-guilt/957A59115BD0A14805C7550ED5038187  (discussing the pitfalls of the

Gacaca process including that judges were given only one week's training and records were kept in handwriting). Prior efforts by the U.S. government to locate relevant Gacaca records have been largely unsuccessful. If the defendant ultimately asserts that he has obtained Gacaca records for use in this case, the government will need time to ensure that the records have not been fabricated, distorted, or otherwise manipulated.

**IV.    Producing responsive evidence just to the defense is inconsistent with the letters rogatory process, Rule 17(c), and will lead to extended delays.**

The defendant also suggests that any documents produced by the foreign authority be obtained by his agent without the involvement of the U.S. State Department or this Court. Such a procedure conflicts with the civil letters rogatory process, *see* 22 C.F.R. §92.66, as well as the requirement under Rule 17(c)(1). Under both regimes, any evidence produced pursuant to court process be returned directly to the court. 22 C.F.R. §92.66(c)(1); Fed.R.Crim.P. 17(c)(1).

The defendant also suggests that even if the evidence produced is submitted directly to the Court by a foreign authority, this Court should make that evidence available to the defense but not the government. This unequal access to admissible trial evidence conflicts with the plain language of Rule 17(c)(1), which suggest that the Court has the discretion to produce the evidence to **both** parties, not just one party to the exclusion of another. It also conflicts with that line of cases cited above which prohibit the *ex parte* use of Rule 17(c) subpoenas. *See*, *Garg*, 2024 WL 37047, at *2; *Steward*, 1997 WL 103700.  It should also be noted that the evidence received would not be for impeachment, so production to both parties at the same time would not prematurely disclose evidence to be used in cross-examination. *Weisberg*, 2010 WL 5027537, at *1 *citing Nixon*, 418 U.S. at 701. Moreover, Fed.R.Evid. 902(3), which addresses the authenticity of foreign public documents suggests that an adverse party should be given "a

10

reasonable opportunity to investigate the document's authenticity and accuracy." Fed.R.Evid. 902(3).

## Conclusion

The government respectfully requests that the Court deny the defendant's motion to proceed *ex parte* in requesting letters rogatory from this Court. The defendant fails to cite a single case, statute, or treaty which authorizes such an *ex parte* procedure. Moreover, related civil letters rogatory and Fed.R.Crim.Pro. 17(c) subpoenas are not properly issued *ex parte*. Finally, proceeding *ex parte* invites confusion, delay, and unnecessary complexity in a process which is already convoluted and time-consuming. It also potentially injects the misuse of U.S. process abroad.

In the event the defendant decides to further pursue letters rogatory in this matter, the government respectfully requests that the Court order that the defendant submit a motion on the record which: identifies the foreign entities from which evidence is sought; identifies the specific evidence sought; and demonstrates that the requests meet each of the four tests under *Nixon*, as outlined above. In keeping with ordinary letters rogatory process and Rule 17(c), as discussed above, the defendant's concerns about revealing trial strategy are misplaced. In the event that the defendant cannot meet the *Nixon* standard without referring to trial strategy, the Court should decline to employ its authority to issue letters rogatory. Finally, in the event that letters rogatory issue, and a foreign entity responds, the government respectfully requests that the evidence be produced to the Court and made equally available to both parties substantially in advance of trial so that the government can ensure that evidence is authentic and has not been tampered with,

among other things.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:     *s/John T. McNeil*
        JOHN T. McNEIL
        AMANDA BECK
        Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

Suffolk, ss.:                                Boston, Massachusetts
                                             November 15, 2024

I, John T. McNeil, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                    *s/John T. McNeil*
                    JOHN T. McNEIL