UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Docket No. 1:24-cr-10071-FDS |
| ERIC TABARO NSHIMIYE, | ) |
| | ) |
| Defendant. | ) |

### GOVERNMENT'S MOTION FOR CLARIFICATION AND RECONSIDERATION, AND REQUEST FOR A HEARING

The United States of America, by and through undersigned counsel, hereby submits this motion for clarification and reconsideration of the Court's Order entered on December 17, 2024. [D.62] (the "December 17 Order"). The government also requests a hearing on this matter. In filing this motion, the government respectfully reserves the right to object to the legal conclusions reached in the December 17 Order pursuant to *Rules For United States Magistrate Judges in The United States District Court For The District Of Massachusetts* (September 2022) ("MJ Rules"), Rule 2(b). Moreover, since the December 17 Order addresses only the *ex parte* nature of the defendant's motion, and not the underlying merits of the motion for letters rogatory, it does not appear that the Order is a final order for purposes of MJ Rules 2(b).[1]

**I.**

In its opposition to the defendant's motion, the central issue the government had the opportunity to address was whether, as a purely legal matter, a Court may issue a letters rogatory upon an *ex parte* application of the defendant in a criminal matter. While the government

---

[1] In the event that the Court concludes that the December 17 Order is a final order, the government respectfully requests leave to file an objection.

1

respectfully disagrees with the Court's legal conclusion on this novel question of law for the reasons stated in its opposition, *see* [D.58], the Court has left open the possibility that the defendant's motion for a letters rogatory, or some portion of that motion, will be made available for the government's review (and opposition). [D.62 at pp. 11, n.9]. The Court's decision to permit an initial *ex parte* filing was largely premised on the acceptance of the defendant's unsupported assertion that his entire motion for letters rogatory would reveal his trial strategy.[2] The Court credited this assertion, and issued its decision, without requiring a supporting affidavit from the defendant as required by Local Rule 7.1(b)(1).

The government believes that the further development of the factual record by the defendant would assist in resolving this matter, and could prevent an unnecessary objection and appeal. As suggested by the Court, the defendant must now demonstrate – rather than simply assert – that proceeding *ex parte* is necessary to prevent the premature disclosure of his trial strategy. In the event the defendant fails to meet this heavy burden of showing that the entire motion and related requests should be considered *ex parte* and under seal, the government presumes that it will be given the opportunity to review (and potentially oppose) the motion on its merits. Similarly, in the event that the Court concludes that some portions of the motion – such as the identity of the foreign government or other entity to which the letters rogatory will be sent, or the alleged duration of any letters rogatory process – does not reveal trial strategy, the government also presumes that it will be given an opportunity to address those issues for the

---

[2] While the government agrees that the defendant should not be compelled to prematurely reveal his trial strategy, the government does not agree that the defendant has any statutory or constitutional right to conceal witnesses' identities, or "documents protected under the work product doctrine." [D.62 at pp. 2]. While a few prior decisions have employed such language, it appears to be superfluous undefined dicta without foundation in established law. *See, e.g. United States v. Peters*, 2007 WL 4105671, at *1 (W.D.N.Y. Nov. 14, 2007) (discussing only the defendant's right to protect trial strategy).

Court. To this end, the government requests clarification from the Court, either before or after the defendant files his motion, indicating what additional opportunity it will have to address the merits of the defendant's motion for letters rogatory.

This Court has suggested that the government has already had an opportunity to address the merits of the defendant's motion, relying on *United States v. Beckford*, 964 F.Supp. 1010, 1030 (EDVA 1997). [D.62 at pp. 11]. Respectfully, *Beckford* should not be so narrowly read. In *Beckford*, the Court concluded,

> In most instances, it will not be necessary to disclose trial strategy, divulge witnesses or work product, or implicate a privacy right merely to make the application for issuance of a pre-trial subpoena *duces tecum*. **And, a party seeking to proceed *ex parte* will have to meet a heavy burden to proceed in that fashion**. For the most part, a party seeking an *ex parte* pre-trial subpoena *duces tecum* will be able to serve a motion on the adversary asking that the subpoena ultimately be issued *ex parte* and explaining why it is necessary to proceed *ex parte*. That affords the opposing party an opportunity to be heard on the need for the *ex parte* procedure.

*Id.* (emphasis added). It cannot be the case that simply invoking the words "the motion will reveal a trial strategy" is sufficient to afford the government an adequate opportunity to be heard on the merits of the motion. This is particularly so when even the most basic information about the government or party to be issued the letters rogatory or the general topic of the letters rogatory is absent from the defendant's motion. Among other things, the U.S. Department of Justice Office of International Affairs routinely interacts with foreign governments regarding the location, recovery, and exchange of evidence. This Court should welcome, rather than hold at arm's length, the substantial expertise offered by the Office of International Affairs in deciding the viability of proceeding via letters rogatory.

The Court has also suggested that it "will likely utilize Rule 17 and the *Nixon* tripartite standard to adjudicate a motion for letters rogatory." [D.62 at pp. 11]. Since the Court has yet to even decide on a standard to evaluate the merits of the defendant's motion, the government submits that it has not had a meaningful opportunity to participate in this process. The exclusive issue litigated to date was the propriety of an *ex parte* submission rather than the merits of the issuance of letters rogatory. Notably, one of the cases upon which the Court relied in the December 17 Order, *United States v. Van Avermaet*, 2024 WL 3835320, at *2 (D.D.C. Aug. 15, 2024), required more than just meeting the *Nixon* standard to issue letters rogatory. The Court in *Van Avermaet* required that the requesting party also address the five factors of the comity analysis:

> (1) the importance to the litigation ... of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id*. To date, neither the defendant nor the Court have suggested that a review of a request for the issuance of letters rogatory would need to meet anything more than the *Nixon* standard. Notably, the Court in *Van Avermaet* had the benefit of the government's full participation in the vetting of the defendant's request: the matter was submitted on the record and both the subject of the letters rogatory and the documents requested were fully known to all. *Id.* (Why the defendant's request in this case is any different than that in *Van Avermaet* remains a mystery.) At a minimum, without government input into the standard to be employed by the Court in assessing the merits, it cannot be said that the

government has already meaningfully participated in the issuance of letters rogatory, as suggested by the Court's reading of *Beckford*.

On a separate issue, the government respectfully submits that the Court should vacate or modify its decision on whether the materials returned in response to the letters rogatory should be placed under seal and made available only to the defense in the first instance. As the Court itself noted, this request by the defense was premature. [D.62 at pp. 14]. While the Court concluded that the interest of thoroughness counseled a preliminary decision on this matter, without a more robust factual record it may be that a decision at this stage will detract from, rather than advance the interests of justice or the timely resolution of this matter. The Court should have the benefit of the specific letters rogatory and the defendant's case-specific demonstration of why the documents returned would reveal a trial strategy before reaching a decision on this issue. In addition, to the extent that some portion of the request for letters rogatory is provided to the government, the government may have valuable expertise to assess whether the resulting documents should be returned under seal.

The government notes that letters rogatory, like Rule 17 subpoenas, can only be used to seek evidence and not discovery, and cannot be used just to obtain cross-examination material. [D.58 at pp. 6]. While a request for letters rogatory may contain information which reveals trial strategy to meet the *Nixon* standard and the comity tests, it is not necessarily the case that the evidence produced in response will reveal a trial strategy. Moreover, as noted in the government's opposition, in the event that the defendant seeks to introduce foreign records at trial, it is essential that all parties have an

5

adequate opportunity to assess the reliability of those records prior to trial. [D.58 at pp. 10-11].

Finally, it should be noted that there may be foreign records which the defendant seeks, which the government agrees should be produced in this case. For instance, if there are reliable records demonstrating the defendant's presence at a refugee camp in Zaire, Tanzania, or Kenya during the genocide, then the government may be willing to use its mutual legal assistance ("MLA") authority to seek that evidence from the relevant authority. The use of the MLA process is frequently much faster than the letters rogatory process. In addition, if the records are obtained through an MLA process both parties can be more confident of their reliability.

## II.

For the reasons set forth above, the government respectfully requests clarification or reconsideration of the following issues:

1. That the December 17 Order is not a final order for purposes of MJ Rules 2(b);

2. That in evaluating the defendant's *ex parte* motion the Court will require the defendant to carry the "heavy burden" of demonstrating why every portion of his motion reveals trial strategy, including but not limited to those portions of his motion which identify the entity to which the letters rogatory are to be issued, the agent through which he intends to serve the letters rogatory[3], and the defendant's estimate of time for the responsive records to be produced;

---

[3] The government notes that in connection with the protective order in this case, the defendant suggested that he may retain an individual in East Africa who was once the subject of an obstruction of justice prosecution by the International Criminal Tribunal for Rwanda. While that individual was acquitted, the Court should ensure itself that other foreign agents employed to serve U.S. Court process are not of concern to U.S. diplomatic authorities in the respective countries. While the Court concluded that the government's concerns regarding corruption are "speculative," because the government has been kept in the dark about the agent and process to be employed, there is no choice other than to be speculative. Moreover, a review of Transparency International Corruption Perception Index scores for countries in East Africa, such as the Democratic Republic of Congo, Kenya, and Tanzania reveal a substantial pattern of public corruption.

3. That, in the event the defendant does not meet his "heavy burden" for all parts of his motion, the government be given an opportunity to address the merits of the motion;

4. That, in deciding whether to grant or reject the defendant's motion for letters rogatory, the Court will issue a public opinion which clarifies the standard upon which it decided that the motion was appropriately submitted *ex parte*, and the standard upon which it granted or rejected the merits of the request; and

5. That the Court vacate or modify Section C. of the December 17 Order and reconsider its decision in light of the specific requests made by the defendant and the likely records to be produced.

Given the novel issues presented by the issuance of letters rogatory in the context of a criminal case, the potential for substantial delay if the Court grants the defendant's motion, as well as the fact that the government has been left to speculate as to the nature and content of the letters rogatory, the government also requests a hearing on this matter.

                                                  Respectfully submitted,

                                                  JOSHUA S. LEVY
                                                  United States Attorney

                    By:    *s/John T. McNeil*
                               JOHN T. McNEIL
                               AMANDA BECK
                               Assistant U.S. Attorneys

## **CERTIFICATE OF SERVICE**

Boston, Massachusetts
December 30, 2024

I, John T. McNeil, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*s/John T. McNeil*
JOHN T. McNEIL