

**U.S. Department of Justice**

*Joshua S. Levy*
*Acting United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

August 2, 2024

Maksim Nemtsev, Esq.
20 Park Plaza, Suite 1000
Boston, MA 02116

Kurt P. Kerns, Esq.
328 N. Main Street
Wichita, KS 67202

      Re:    *United States v. Eric Tabaro Nshimiye*
                Criminal No. 1:24-cr-10071-FDS

Dear Counsel:

      This letter responds to your discovery letter dated July 16, 2024. Pursuant to Local Rule 116.3(a), discovery request letters must be submitted to the government within 14 days of the production of automatic discovery. Automatic discovery was produced by letter dated June 3, 2024. Your discovery request letter does not comply with Local Rule 116.3(a), and the government reserves the right to assert a violation of this requirement in the event that discovery litigation arises in this matter. In addition, to the extent that your discovery letter seeks information covered by the Local Rules, the request violates Local Rule 116.3(d), and the government reserves the right to assert such a violation if discovery litigation arises in this matter.

      With regard to each of your requests, the government notes that it has and will comply with Local Rules 116.1 and 116.2 under the schedules established by those rules. The government notes, however, that many of the requests included in your discovery letter would include material that is not in the custody or control of the prosecution team in this case. For instance, material related to Gacaca proceedings in Rwanda or possessed by independent investigating agencies in Rwanda, the now closed International Criminal Tribunal for Rwanda (ICTR), or other foreign countries falls outside those materials in the custody and control of the prosecution team. Moreover, the government has no obligation to seek such information from independent entities in order for that information to be produced to the defense. *See, e.g. McLaughlin v. Corsini*, 577 F.3d 15, 21 (1st Cir. 2009)("Under *Brady*, the allegedly exculpatory

information must be possessed or controlled by the prosecution team or its agents in order to give rise to a duty to disclose); *United States v. Hall*, 434 F.3d 42, 55 (1st Cir. 2006)("The government's obligations under *Brady* only extend to information in its possession, custody, or control"); *United States v. DeCologero*, 2013 WL 3728409, at *5 (D. Mass. July 11, 2013), *aff'd*, 802 F.3d 155 (1st Cir. 2015)("[A] *Brady* violation does not exist just because 'the government, through a more vigorous investigation, might have been able to discover the evidence' *citing United States v. Maldonado–Rivera*, 489 F.3d 60, 67 (1st Cir.2007)). Nonetheless, as demonstrated by the government's discovery production to date, if the prosecution team comes into possession of material which is exculpatory under *Brady*, the government will produce that material to the defense.

As reflected in the discovery produced to date, the prosecution team has made substantial efforts to ensure that neither Rwandan government officials nor private actors in Rwanda affect the candor of witnesses or their willingness to testify. In addition, the prosecution team has made substantial efforts to protect against unfounded defense arguments that the Rwandan government has played any substantive role in this investigation and prosecution. In keeping with these efforts, the government has not made mutual legal assistance requests of the Rwandan government for information related to this matter, nor has it requested that Rwandan officials facilitate interviews or gather evidence. As a result, except in those cases in which a witness admits a prior conviction or admits prior testimony, the prosecution team often has no knowledge of such information and is not in possession of it.

With regard to your specific requests, the government responds as follows:

1. You have requested information regarding promises, rewards, and inducements provided to witnesses in *United States v. Jean Leonard Teganya*, 1:17-cr-10292-FDS. In the event that a trial witness in this case was also called as a trial witness in the *Teganya* matter, the government will provide to the defense evidence of promises, rewards, and inducements related to both cases. Evidence of promises, rewards, and inducements provided to witnesses whom the government called in the *Teganya* trial and whom the government will *not* call in this case is irrelevant and beyond the government's discovery obligations. While your request does not distinguish between *Teganya* witnesses called by the government and those called by the defense, any request that seeks promises, rewards, and inducements provided by Mr. Teganya to his witnesses is best sought from Mr. Teganya, and the government declines to produce such evidence if any exists. The government also notes that the federal government's payment of travel costs, related *per diem*, and witness fees do not constitute a promise, reward, or inducement: all witnesses in a federal trial are entitled to such payments. *See gen*. 28 U.S.C. § 1821 (Per diem and mileage generally, subsistence). The government declines to produce evidence related to such payments except to say that every foreign witness (defense and prosecution) in the *Teganya* trial received a roundtrip airline ticket, hotel accommodations, *per diem* subsistence payments, witness fees, and reimbursement for incidental travel costs not covered by the *per diem* subsistence.

2. You have requested information which allegedly arises from testimony of HSI Special Agent Brian Anderson. Special Agent Anderson has not testified in this matter, either in grand jury or at any preliminary hearing. This request is unclear and beyond the scope of

the government's discovery obligations.

3. You have requested information about informal agent interviews in which the interviewee did not identify Mr. Nshimiye. To the extent that a witness which the government intends to call in its case-in-chief has participated in an identification procedure, information about that procedure has been provided to you with automatic discovery. *See* Local Rule 116.1(c)(1)(F); *see also* Discovery Letter dated June 3, 2024 at page 4. In addition, the government will comply with Local Rule 116.2(b)(1)(F); however, other than what has been provided to date, the prosecution team is unaware of the failure of any percipient witness identified by name to make a positive identification when that named percipient witness participated in an identification procedure. To the extent you seek information about persons the government does not anticipate calling in its case-in-chief or who are not named percipient witnesses, this request is beyond the government's discovery obligations, and the government declines to produce such information.

4. You have requested the identity of any person in Rwanda who has facilitated the investigation and/or prosecution of this matter. As you are aware from the reports produced to date, on a trip to Rwanda to interview witnesses in January 2024, the government received assistance from translators and a driver. In addition, as required by diplomatic protocol, the case team coordinated this visit with various individuals at the United States Embassy in Kigali. The identities of such persons are beyond the scope of the government's discovery obligations and pose the risk of intimidation and harassment of those individuals by persons who seek to benefit the defendant. As such, the government declines to produce this information. The case team also received permission to conduct an investigation from the National Public Prosecution Authority. A copy of the letter authorizing our investigation was produced in discovery. (USAO_016097 - USAO_016098). No person within the Rwandan government was present at, or participated in, any witness interview. Moreover, witnesses were told that information which they provided to us would not be provided to, or discussed with, officials in the Rwandan government.

5. Please see response to #4.

6. You have requested information about anything of value given by the Rwandan government "to any government witness or witness' family members in connection with gathering or providing information about the genocide." This request is overbroad, seeks information not in the custody of control of the prosecution team, and is beyond the scope of the government's discovery obligations. The government respectfully declines to produce any information in response to this request.

7. You have requested information about anything of value given by the Rwandan government "to any government witness or witness' family members in connection with . . . this case." The prosecution team has and will produce information about any promise, reward, or inducement provided by the prosecution team to a witness the government intends to call in its case-in-chief. The prosecution team is unaware of anything of value provided by the Rwandan government for a witness's participation in the investigation of

3

this case. To the extent the prosecution team learns of such an inducement to a person the government calls in its case-in-chief, we shall produce information about it to the defense prior to the witness's testimony. *See*, Local Rule 116.2(b)(1)(C). However, the prosecution team has neither the ability nor the obligation to compel a government official in Rwanda to provide such information.

8. With regard to the witnesses the government intends to call in its case in chief, the government will comply with its obligations under 18 U.S.C. §3500 ("the Jencks Act"). To the extent the government comes into possession of prior witness statements that fall within the Jencks Act, the government will produce such statements in keeping with its obligation under that statute. With regard to witness statements provided to non-governmental organizations (such as Human Rights Watch), government organizations (such as foreign law enforcement organizations), and statements made in Gacaca proceedings or to the ICTR, as noted above, the government has no obligation to seek such statements, if they exist. As a result, this request is overbroad, seeks information not in the custody of control of the prosecution team, and is beyond the scope of the government's discovery obligations. The government declines to produce any information other than that specifically noted herein.

9. This request seeks any "judgment or finding" in any "administrative/judicial body concerning the government's witnesses." By its terms, this request is overbroad. Among other things, it seeks findings in unrelated civil or administrative matters (such as divorce or licensing proceedings) that happen to mention a government witness. In addition, this request seeks information not in the custody or control of the prosecution team, as it specifically references foreign proceedings such as the Gacaca process and the ICTR. If the government acquires records related to a witness it intends to call in its case-in-chief, and if those records either contain exculpatory information or are covered by the Jencks Act, the government will produce such information.

10. This request is convoluted and overbroad. Please reformulate this as a specific request for information, and the government will respond to the specific request. In doing so, please review the questions posed to the defendant when he was interviewed in Kenya as part of his refugee application and the questions posed to him in his LPR and naturalization applications.

11. This request seeks information regarding individuals transported to or from meetings with U.S. or with Rwandan investigators in connection with the *Teganya* case or this investigation. As noted above, the prosecution team has not worked with Rwandan government officials to interview witnesses, and the prosecution team has no information regarding witnesses transported for its investigations (if any). With regard to persons transported in connection with the *Teganya* case, the government declines to produce such information as it is irrelevant and beyond the scope of discovery in this case. With regard to those witnesses who were "transported" in connection with this case, there is no object to that sentence. Some witnesses arrived by foot; other witnesses arrived by car; some witnesses may have arrived by other means of transport. We have produced information regarding reimbursement amounts paid to witnesses who spoke with members of the prosecution team in Rwanda If your request relates to any witness who

4

|   |   |
|---|---|
|    | was driven to an interview or from an interview by a driver employed by the prosecution team, the witness interviewed in Nyanza on January 20, 2024 (summarized in ROI-020), was driven to and from the interview by a driver employed by the prosecution team. Note that at the time of the interview the witness had a cast on his leg and used crutches to walk. |
| 12. | No witnesses in this case have been "gathered, grouped, or housed together" in connection with their interviews. With regard to the *Teganya* case, the request is overbroad and beyond the scope of the discovery obligations. (The government notes that all of the witnesses in *Teganya* – both defense and prosecution – who were brought from Rwanda or other foreign countries for trial were lodged in the same hotel prior to and during their trial testimony. Prosecution witnesses were lodged on one floor and defense witnesses were lodged on a separate floor. Each group had a common room as well as individual rooms. ) |
| 13. | Prior to trial, the government will inquire of each of the witnesses which it intends to call in its case in chief whether they have been convicted of a crime, whether they have served a sentence, and where they served that sentence. That information will be produced to the defense. Because of the government's reluctance to confer with the Rwandan government regarding government witnesses (in large part to avoid defense arguments that Rwandan officials act as agents of the United States), information regarding the location of incarceration is not currently within the custody and control of the prosecution team and is beyond the scope of discovery. *See, supra*. |
| 14. | The prosecution team has produced all information that is in its custody and control and that would directly exculpate the defendant. This includes the grand jury testimony of Jean Leonard Teganya. The defendant's alien file makes no suggestion that, in June 1994, the defendant applied for a visa to travel from Nairobi, Kenya, to the United States. The prosecution team will request that the United States State Department search its archives, and if responsive information is located, will provide additional information. (Please note that the suggestion that the defendant was in Nairobi in June conflicts with his memoir recounting his time in Rwanda, the DRC, and Nairobi prior to his immigration to the U.S. It also conflicts with witness statements placing him in Butare during the genocide.) Also please note that the government has made a reciprocal request for discovery related to alibi in its letter dated June 3, 2024, and has received nothing from the defense. The government reiterates its request pursuant to Fed.R.Crim.Pro. 12.1. |
| 15. | Copies of identity documents that the defendant presented to immigration authorities have been produced as part of the defendant's alien file. (USAO_016296 - USAO_016363). Copies of the defendant's United States passport applications have been produced as part of discovery. (USAO_016492 - USAO_016505). A summary of the defendant's travel, and the documents he used in connection with that travel, have been produced at USAO_016078 - USAO_016081. The prosecution team has no information regarding the defendant's possession or use of a Rwandan passport during or after his application to become a refugee to the United States. A copy of the defendant's current passport can be obtained from the U.S. Probation Office. The prosecution team is |

      not in possession of a copy of the defendant's current or prior passports.

16. Identification documents used by the defendant to obtain public assistance are not in the custody and control of the prosecution team and are beyond the government's discovery obligations. If the defendant provides information regarding where and from whom he sought public assistance, the prosecution team may be able to obtain such records.

17. The prosecution team has produced the defendant's alien file. Visas or temporary stay documents from the countries of Congo, Kenya, and Tanzania are not in the custody or control of the prosecution team and are beyond the scope of the government's discovery obligations.

18. The prosecution team has produced in automatic discovery records it obtained from the ICTR. (USAO_000932 – USAO_015436). Beyond those documents produced to date, the prosecution team declines to obtain and produce additional information from the ICTR. Such information is not in the custody and control of the prosecution team and is beyond the scope of the government's discovery obligations.

      The government requests reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure and Local Rule 116.1(d).

      Very truly yours,

      JOSHUA S. LEVY
      Acting United States Attorney

By:   */s/ John T. McNeil*
      John T. McNeil
      Amanda Beck
      Assistant U.S. Attorneys