UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)   Crim. No. 24-cr-10071-FDS<br>ERIC TABARO NSHIMIYE, )<br>)<br>Defendant. ) | |

**GOVERNMENT OPPOSITION TO DEFENDANT'S
MOTION TO CONTINUE THE TRIAL**

The United States of America, by and through undersigned counsel, respectfully submits this opposition to Defendant Eric Nshimiye's Motion to Continue the Trial.

Defendant predicates his request for a continuance on outstanding requests for records made to the ICTR and to Rwandan government authorities. Both the government and this Court, however, have recognized that the requests amount to an unnecessary and overbroad fishing expedition. The government made these requests only as a courtesy to the defendant—to put to rest the dispute over the defendant's request for letters rogatory—and with the understanding that these requests *would not* be the basis to continue the trial. In short, there is no reason to believe that these requests will produce exculpatory evidence; no legal obligation requires the Court or the government to seek or obtain the requested materials; and, accordingly, there is no justification to continue the trial based upon the outstanding requests.

BACKGROUND

Repeatedly in this case, the defendant has sought to use Court-authorized process to obtain records from countries and entities abroad. And repeatedly, the Court has denied the requests and explained that the defendant's requests are improper. The defendant first submitted his request for letters rogatory *ex parte* in January 2025. The Magistrate Court outright denied

seven of the nine letters, explaining that the proposed letters "amount to a fishing expedition and lack specificity," that the defendant was "using at least some of the letters as a discovery device," and that issuing the letters would violate both Rule 17(c) and the standards set forth by the Supreme Court in *United States v. Nixon*. Dkt. No. 77. The Court also urged the defense to make a narrower, *ex parte* request for the two remaining letters. Dkt. No. 77. The defendant subsequently submitted that narrower request, again *ex parte*. Dkt. No. 80. After the Court ordered the defense to disclose the motion and the two proposed letters rogatory to the government, the government agreed to seek the requested records—passport and other travel documents from Rwanda and Kenya from 1994—on the defense's behalf. Neither government request yielded any responsive records.

The defendant appealed the ruling denying authorization of the letters rogatory to this Court claiming that the proposed letters—contrary to the Magistrate's ruling—were "precise" and "focused." Dkt. No. 127. At an October 14, 2025 status conference, the Court agreed with the government that the requests were overbroad and not reasonably targeted towards obtaining admissible evidence, and ordered the defendant to submit narrowed requests. Dkt. No. 131. In response, the defendant submitted a request for three letters rogatory—which still sought records concerning dozens and dozens of witnesses from three different foreign entities. Dkt. No. 132. At a subsequent status conference, the District Court again expressed the view that the requested letters rogatory remained overbroad but remanded the issue to the Magistrate Court for mediation. Dkt. No. 139.

Before the Magistrate Court, the government continued to urge denial of the letters rogatory request, reiterating—as both the District Court and Magistrate Court had recognized—that the requests were an overbroad and improper fishing expedition. *See* Dkt. No. 148.

For his part, the defendant continued to seek letters rogatory directed to the ICTR and to the Rwandan government entity holding records of Gacaca proceedings occurring in that country. The defendant represented—contrary to the government's understanding—that these Gacaca records were digitally searchable and that defendant's request could be complied with in short order. Based on these representations, the Court pressed the government to submit requests for the records that could be obtained through digital searches on the defendant's behalf. The government agreed to do so and has submitted those requests—but in doing so made clear: (i) the requests remained overbroad and the government was submitting them as a courtesy—not out of any legal obligation; (ii) that agreement to submit these requests was based upon the defendant's representation that the recipients could quickly provide responsive records and so the requests would not delay trial; and (iii) failure for the recipients of the outstanding requests to respond in a timely fashion *should not* be a reason to continue the trial.[1]

Having submitted the requests on behalf of the defendant, and relying on the March 16 trial date, undersigned counsel and government investigators traveled to Rwanda and interviewed witnesses in the Rwandan cities of Kigali, Butare, and Ruhengeri. The government anticipates producing reports of those interviews shortly—well in advance of the deadline for production of *Jencks* material—along with other records and evidence collected during the investigative trip. During interviews, the government informed potential witnesses of the March 16 trial date to ensure their availability and willingness to travel at that time.

---

[1] When making the requests, the government informed the ICTR and the Rwandan government of the March 16 trial date. The ICTR indicated that it anticipates producing responsive records on or by March 1, 2026. The Rwandan government has not indicated that it can or will produce records by any specific date or that it can produce a comprehensive and complete response to the records request.

Now, after the government made the record requests on the defendant's behalf, the defendant has asked this Court to continue the trial on account of those outstanding requests. Dkt. No. 158.

## ARGUMENT

If the defendant believes that this case cannot proceed to trial while the requests remain outstanding, the proper course is for the government to withdraw the requests and for the Court to deny the motion for letters rogatory—putting the issue to rest and removing any cause for delay.

First, no legal obligation exists requiring the Court or the Government to assist the defendant in seeking out these records. As both the government and the Court has repeatedly pointed out, defendant's requests are an overbroad fishing expedition—an attempt to trawl collections of records held by foreign entities in the hopes of turning up something useful. Indeed, despite multiple rounds of briefing, defendant has yet to articulate or identify any specific facts or evidence it hopes to obtain through these requests. Because the requests fail the requirements of "(1) relevancy; (2) admissibility; and (3) specificity," *United States v. LaRouche*, 841 F.2d 1176, 1179 (1988), and amount to a "general 'fishing expedition,'" *United States v. Nixon*, 418 U.S. 683, 700 (1974), neither the Court or the government is obligated to facilitate the records request. By much the same token, nowhere in defendant's motion do they provide any assurance that responsive records request will be produced in six-months—or ever—and nowhere does the defendant provide assurance that he will not again seek an eleventh-hour continuance of a new trial date.

Second, the government submitted the two outstanding requests only as a courtesy. And it did so based upon the defendant's representation that the requests could be easily and swiftly

4

complied with. Now that the requests are submitted, the defendant is making a near-immediate about-face, requesting a *six-month* continuance of the trial to permit time for records to be produced and reviewed by the defense. This is wholly inappropriate gamesmanship that the Court should not countenance.

Third, the government has now expended significant time and resources, and made representations to witnesses based upon the firm trial date set by the Court. Trials generally—and particularly trials like this involving numerous overseas witnesses—require intensive planning, preparation, and expense. The government has met with potential witnesses, told them of the March 16, 2026 trial, explained the required logistics for traveling to the United States, and obtained commitments that witnesses are willing and able to travel at that time. Changing the trial date at this point is unfair and against the interests of justice.

## CONCLUSION

For over a year now, the defendant has pursued requests for records to which he is not entitled. Now, that the government has made those requests, despite its strong misgivings and reservations, defendant is using those requests as a lever to delay trial—just as the government feared and sought to avoid. The proper remedy here is not to indulge further the improper requests for records and make them a basis to delay justice, but to deny the outstanding letters rogatory request, proceed to trial as scheduled, and, if required to avoid distraction and delay, the government will withdraw the unnecessary and unwarranted requests.

Respectfully submitted,

LEAH B. FOLEY,
United States Attorney

By:  */s/ Christopher Looney*
Jason A. Casey
Christopher Looney
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Christopher Looney*
Christopher Looney
Assistant U.S. Attorney

6