UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Criminal Action No. 24-cr-10071-FDS |
| ERIC TABARO NSHIMIYE, | ) ) ) | |
| Defendant. | ) ) ) | |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

SAYLOR, J.

This is a criminal case arising out of a six-count indictment charging defendant Eric Tabaro Nshimiye with perjury, obstruction of justice, and knowingly concealing material facts in his application for refugee status in the United States. Nshimiye has moved to dismiss the indictment, asserting that the Rwandan government and its restrictions on speech will prevent the witnesses from speaking freely about the genocide, rendering their testimony unreliable, and that admitting such testimony would violate his due-process rights. In the alternative, he has also moved to dismiss Count One and partially dismiss Count Three of the indictment, which charge perjury in violation of 18 U.S.C. § 1623(a). He contends that the government cannot establish that the statements alleged in Counts One and Three were knowingly false or material.

For the following reasons, the motion will be denied.

I.   **Background**

A.   **Factual Background**

Eric Tabaro Nshimiye was born and raised in the Republic of Rwanda. He is a Hutu,

which is the majority ethnic group in Rwanda.  In April 1994, the Rwandan genocide targeting the country's Tutsi ethnic population began.  At the time, Nshimiye was enrolled as a medical student at the University of Rwanda in Butare.  The government alleges that Nshimiye was an active member of the Movement Revolutionaire National pour le Development ("MRND"), a group that committed genocidal acts in Rwanda in 1994.  At some point in 1994 or 1995, Nshimiye fled Rwanda to Kenya.  In May 1995, he applied to become a refugee to the United States and was admitted in December 1995.  He became a lawful permanent resident of the United States in 1998 and achieved United States citizenship status in 2003.  The government alleges that he knowingly made false statements about his involvement in the Rwandan genocide at each stage of the immigration process.

In April 2019, Nshimiye was called to testify as a defense witness on behalf of Jean Leonard Teganya, his former University classmate and roommate.  *United States v. Jean Leonard Teganya*, No. 17-cr-10292-FDS (D. Mass. 2017).  Teganya was charged with committing perjury and making false statements during immigration proceedings about his membership in the MRND and his actions during the Rwandan genocide.  Nshimiye testified under oath before a federal jury.

### B.    Procedural Background

On March 26, 2024, Nshimiye was indicted on six counts, charging him with perjury in violation of 18 U.S.C. § 1623(a) (Counts 1-4); aiding and abetting the obstruction of justice in violation of 18 U.S.C. §§ 1503 and 1502 (Count 5); and falsifying, concealing, and covering up a material fact by trick, scheme, or device in violation of 18 U.S.C. § 1001(a)(1) (Count 6).  The government subsequently dismissed Count 6 under Fed. R. Crim. P. 48(a).

In Count One, Nshimiye is charged with perjury for testifying that while he and Teganya were University roommates, Teganya did not wear a scarf or hat with MRND insignias.  When

asked about the apparel, he replied "I don't remember this type of hat," and replied in the negative to questions about Teganya displaying a MRND flag and attending political rallies during university. In Count Two, he is charged with perjury for denying that he lived in Butare during the genocide. When questioned under oath, he stated that "[he] was not in Butare," but rather in Kigali.

In Count Three, Nshimiye is charged with perjury for denying his own involvement in the MRND, including political rallies and trainings. He also denied wearing a scarf, hat, and lapel pin marked with MRND insignias and colors during his time at university. In Count Four, he is charged with perjury for denying his involvement in the genocide while under oath.

In Count Five, Nshimiye is charged with aiding and abetting the obstruction of justice under 18 U.S.C. §§ 1503 and 1502. The government contends that he knowingly concealed material evidence and testified falsely in *Teganya*.

Nshimiye has moved to dismiss the indictment for due-process violations and, in the alternative, to dismiss Count One and partially dismiss Count Three of the indictment.

II.    **Standard of Review**

A district court has the power to dismiss an indictment prior to trial. *See* Fed. R. Crim. P. 12. Dismissal, however, is reserved for "extremely limited circumstances." *United States v. George*, 839 F. Supp. 2d 430, 435 (D. Mass. 2012) (citing *Whitehouse v. United States District Court*, 53 F.3d 1349, 1360 (1st Cir. 1995)). "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits." *United States v. O'Brien*, 994 F. Supp. 2d 167, 173 (D. Mass. 2014) (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)). If the indictment "contains the elements of the offense charged and fairly informs a defendant of the charge which he must defend" and "enables him to plead an acquittal or conviction in bar of

future prosecutions for the same offense," then it is sufficient. *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citing *Hagner v. United States*, 285 U.S. 427 (1932); *United States v. Debrow*, 346 U.S. 374 (1953)).

"There is no summary judgment procedure in criminal cases." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). Likewise, the trial court cannot make a pretrial determination as to the sufficiency of the evidence. *Id.* Only issues that can be determined without a trial on the merits may be raised in a pretrial motion. *See* Fed. R. Crim. P. 12(b) (providing that "any defense, objection, or request that the court can determine without the trial of the general issue" may be raised before trial by motion); *United States v. Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987) ("[A] pretrial motion to dismiss the indictment cannot be based on a sufficiency of the evidence argument because such an argument raises factual questions embraced in the general issue.").

## III. Analysis

Defendant has moved to dismiss the indictment based on alleged due-process violations. He contends that the restrictive speech environment in Rwanda will prevent Rwandan witnesses from testifying freely and truthfully about the genocide. Specifically, he contends that the Rwandan government's strict limitations on free speech, criminalization of political dissenters, and lack of judicial independence will spill over into this case and affect the willingness of the witnesses to speak openly for fear of mistreatment. According to defendant, this would make the testimony of any witness from Rwanda inherently unreliable, which is fundamentally unfair and interferes with his ability to present a defense. That argument falls short, among other reasons, because it does not establish the requisite state action required for a due-process violation.

Broadly, defendant alleges that this prosecution violates the Due Process Clause, which prohibits the federal government from depriving any person of life, liberty, or property without

due process of law.  *See Matthews v. Eldridge*, 424 U.S. 319, 332 (1976).  To state a claim under the Fifth Amendment, a defendant must show *government action* that violates procedural or substantive due process.  *See Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (explaining that constitutional protections require state action); *Gerena v. Puerto Rico Legal Servs.*, 697 F.2d 447, 450 (1st Cir. 1983) (holding that due-process violations require official action, as opposed to private conduct).

Defendant alleges that the government is acting as an agent of the Rwandan government by coordinating with Rwandan authorities and making arrangements for witnesses to come to the United States.  However, bringing in witnesses from abroad is a normal part of criminal cases.  In fact, federal law authorizes cooperation with foreign authorities in gathering testimony.  *See, e.g.,* 18 U.S.C. § 3512 (allowing courts to order testimony in the United States in response to requests from foreign authorities).  Moreover, the alleged political influence of the Rwandan government over the witnesses does not constitute state action on the part of the U.S. government.  The Due Process Clause applies to misconduct by the United States, not to actions by foreign governments or private actors.  *See Colorado v. Connelly*, 479 U.S. 157, 166 (1986) ("The most outrageous behavior by a private party . . . does not make that evidence inadmissible under the Due Process Clause.").  To state a due-process violation, a defendant must plausibly allege conduct attributable to U.S. officials, and even then, the bar is quite high.  Dismissal is appropriate only where the government conduct is "so outrageous that due process principles would absolutely bar the government from invoking judicial processes." *United States v. Russell*, 411 U.S. 423, 431-32 (1973).  Defendant contends that the U.S. government worked with Rwandan authorities to bring witnesses to testify.  But routine practices such as bringing in witnesses from abroad to testify, including international cooperation, do not meet the high bar for

due-process violations.  *See Connelly*, 479 U.S. at 166.

In short, the Fifth Amendment protects against government action, not difficulties arising from foreign political conditions.  In this case, there is no evidence in the record that the U.S. government has created or contributed to the conditions in Rwanda that defendant describes, interfered with witness testimony, or taken any action to suppress or improperly influence witness testimony.  Nor is there any evidence that the U.S. government knowingly intends to call witnesses who will give false testimony.  Without more, allegations concerning the reliability of witness testimony raise credibility and evidentiary issues that must be addressed at trial, not in a motion to dismiss.  *See, e.g., Giglio v. United States*, 450 U.S. 150, 154 (due process requires disclosure of material evidence affecting credibility).

Alternatively, defendant has moved to dismiss Count One and partially dismiss Count Three, both of which allege perjury.  Under 18 U.S.C. § 1623, a statement made under oath constitutes perjury if it is (1) false, (2) known to be false, and (3) material to the proceeding. *United States v. Pagán-Santini,* 451 F.3d 258, 266 (1st Cir. 2006).  With respect to the statements alleged in Counts One and Three of the indictment, defendant contends that the required elements of perjury are not present.  He instead maintains that his testimony during the *Teganya* trial was immaterial and based on faulty memory, rather than knowingly false.  In its opposition to the defendant's motion to dismiss, the government asserts that his statements were knowingly false and material to the proceeding, and that such determinations are a matter for the jury.

Under Fed. R. Crim. P. 12(b)(1), a party can raise any pre-trial motion "that the court can determine without a trial on the merits."  However, the elements of perjury, including knowing falsity and materiality, are typically questions for the jury.  *United States v. Gaudin*, 515 U.S.

506, 510 (1995) (criminal convictions must "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"). There are limited circumstances in which a trial on the merits would not be required.  One such circumstance is "if trial of the facts surrounding the commission of the alleged offense would be of *no assistance* in determining the validity of the offense." *United States v. Covington*, 395 U.S. 57, 60 (1969) (emphasis added).  For example, in *Brunston v. United States*, dismissal was found to be appropriate when the defendant made a statement under oath that was technically true but unresponsive to the question asked.  409 U.S. 352 (1973).  However, the present case is not one of the narrow circumstances in which dismissal would be appropriate.

Nshimiye contends that his testimony was (1) not knowingly false, because the questions concerned events from more than 25 years earlier, and (2) immaterial, because his statements were about trivial facts.  When the elements of perjury, including knowledge and materiality, are in dispute, such determinations should be reserved for a jury.  *See United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997) ("In the normal course of events, a facially valid indictment returned by a duly constituted grand jury calls for a trial on the merits.").  The Court cannot find as a matter of law that the statements were immaterial or that defendant could not have had the requisite intent.  His arguments that his allegedly false statements reflected faulty memory, not intentional conduct, raise factual issues that are not properly resolved on a motion to dismiss. *Gaudin*, 515 U.S. at 519 ("[T]he Fifth and Sixth Amendments require conviction by jury of *all* elements of the crime.").  Accordingly, the motion to dismiss Count One and partially dismiss Count Three will be denied.

## IV.     Conclusion

For the foregoing reasons, defendant's motion to dismiss is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV

F. Dennis Saylor IV

Dated:  June 1, 2026                                       United States District Judge