UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Criminal No. 24-cr-10071-FDS |
| ERIC TABARO NSHIMIYE, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S TRIAL BRIEF**

The government respectfully submits this Trial Brief to summarize the anticipated testimony and evidence in this case and to address certain legal issues that may arise during the course of the trial.

## I. SUMMARY OF THE ALLEGATIONS

### *a. United States v. Jean Leonard Teganya*, 17-cr-10292-FDS

In March and April 2019, this Court conducted a trial in *United States v. Jean Leonard Teganya*, 17-cr-10292. According to the Indictment in that case, Teganya was in Rwanda during the 1994 genocide perpetrated by extremist Hutus against the Tutsi ethnic group, was a member of the Hutu-led MRND political party and the Hutu youth-militia, the Interahamwe, and Teganya actively participated in the genocide against the minority Tutsi ethnic group. After the 1994 genocide, Teganya fled Rwanda and eventually entered the United States in 2014. Upon arrival in the United States, Teganya sought asylum here. In his asylum application, when asked to identify any political party that he had belonged to and his level of participation, he omitted his membership or participation in the MRND, the Rwandan political party that was responsible for perpetrating the genocide. Where the asylum application asked Teganya whether he had ever

participated in causing harm or suffering to anyone because of their race, religion, social group, or other characteristics, Teganya answered "no" even though he had identified Tutsi patients to Hutu soldiers to be killed, and had also beaten, raped, and killed Tutsis himself. After completing the written asylum application, Teganya falsely testified at an asylum hearing that he had never belonged to the MRND, that he had never seen any hospital patient at the Butare hospital turned over to the military to be killed, and that he had never seen any atrocities occur at the Butare hospital where he worked and lived during the genocide.

The Indictment charged Teganya with five counts based on these omissions and false statements—three counts of perjury, in violation of 18 U.S.C. § 1621 and two counts of making false statements on immigration forms, in violation of 18 U.S.C. § 1546.

The jury returned a verdict finding Teganya guilty of each of the charges against him. *Teganya*, 17-cr-10292-FDS, Dkt. No. 155 (Verdict Form).

***b. Eric Tabaro Nshimiye's Testimony in United States v. Teganya.***

Eric Nshimiye was called by the defense as a witness in *United States v. Teganya* on April 2, 2019. In his testimony, Nshimiye made multiple categories of false statements—with each category charged in a separate perjury count of the Indictment.

First, Nshimiye gave falsely exculpatory testimony denying Teganya's membership in and affiliation with the MRND (Charged in Count One of the Indictment).

Second, Nshimiye falsely denied being present in Butare during the Rwandan genocide (Charged in Count Two of the Indictment).

Third, Nshimiye falsely denied his own membership and affiliation with the MRND and the Interahamwe (Charged in Count Three of the Indictment).

Fourth, Nshimiye falsely denied participating in the Rwandan genocide (Charged in Count Four of the Indictment).

***c. The Specific Charges Against Nshimiye***

The Indictment charges Nshimiye with five criminal offenses—four counts of perjury in violation of 18 U.S.C. § 1623(a) and one count of obstruction of justice—all based upon his testimony in *United States v. Teganya*, 17-cr-10292-FDS. The specific testimony underlying each perjury count is set forth below:

**i. <u>Count One (Perjury)</u>**

Q. I'm going to approach and show you a couple of items, just ask if you recognize them. First, I'm showing you a hat marked Exhibit 12. I ask you to look at that and tell me if you recognize that style of hat.

A. <u>I don't remember this type of hat</u>.

Q. I'm also going to show you another item that's been marked Exhibit 15. It's a scarf. Do you recognize what this is?

A. <u>No.</u>

…

Q. Did you ever see a hat like that being worn by Mr. Teganya?

A. <u>No.</u>

Q. Did you ever see a scarf like that being worn by Mr. Teganya?

A. <u>No.</u>

Q. Did Mr. Teganya have a hat or a scarf like that in the room that you shared?

A. <u>No.</u>

Q. Did Mr. Teganya have any sort of flag displayed in his room?

A. No.

Q. To the best of your knowledge, did Mr. Teganya go to any political meetings or rallies?

A. Not that I know of.

**ii. Count Two (Perjury)**

Q. Were you able to go back to Butare after the president's plane was shot down?

A. No.

Q. Did you spend any time in Butare during the genocide?

A. No.

…

Q. And then you were there at the Kiza dorm with Mr. Teganya when four Tutsi students were taken out and killed?

A. No, I was not in Butare.

Q. And you participated in that killing of those students?

A. No, I was not in Butare.

Q. Sir, I remind you you're under oath for these answers.

A. I was in Kigali, then I managed to get back to Ruhengeri.

**iii. Count Three (Perjury)**

Q. Were you yourself a member of a political party as a university student?

A. Never.

Q. In fact, you were a member of MRND; isn't that correct?

A. No.

Q. You wore that hat?

A. No.

Q. You wore that scarf?

A. No.

Q. You testified on direct you don't even remember it, but, in fact, you wore it; isn't that correct?

A. No.

Q. You wore the pins as well?

A. <u>No.</u>

Q. You attended rallies and parties and meetings?

A. <u>No, never.</u>

Q. And you were a member of the Interahamwe?

A. <u>No.</u>

Q. You attended trainings with Mr. Teganya at the gym and in the forest?

A. <u>No; hell, no.</u>

**iv. <u>Count Four (Perjury)</u>**

Q. Sir, I remind you you're under oath for these answers.

A. I was in Kigali, then I managed to get back to Ruhengeri.

Q. So your answer is no, that you didn't participate in the genocide?

A. <u>No.</u>

Q. Is there any context you1d like to add to that?

A. No.

## II. ANTICIPATED TESTIMONY AND EVIDENCE

The government anticipates calling between 15 – 20 witnesses at trial. The witnesses will fall into the following categories or types of witnesses:

***a. Expert Regarding the 1994 Rwandan Genocide***

The government will be calling be calling a Rwandan genocide expert, who is a professor at the University of California—Berkeley. The expert will testify about the following topics: the history of Rwanda, including colonization and self-governance; the descriptions of the Hutu, Tutsi, and Twa populations in Rwanda; the origins of the genocide in Rwanda; the progression of the genocide throughout the country and specifically, to the Butare region; the description of the

genocide in Butare; and the roles of political parties, militias, and the Interahamwe during the genocide. The scope of his potential testimony is set forth more fully in a disclosure that has been provided to the defendants pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G)(vi).

***b. Witnesses who knew the defendant in high school or medical school at University of Butare***

The government anticipates calling several witnesses who knew Nshimiye during high school at the Lycée de Kigali or as a medical student at the University of Butare. In his *Teganya*-trial testimony, Nshimiye denied either he or Teganya were members of the MRND political party, denied that he or Teganya wore garb associated with the MRND, denied that he or Teganya attended or participated in political rallies, and denied his own membership in the Interahamwe. The government will be calling witnesses who will testify that these statements were not true. Specifically, the witnesses will testify that both the defendant and Teganya were openly members of MRND, wore MRND clothing and insignia, and attended political rallies and other party events. Some of the witnesses will also testify that they heard Nshimiye engage in anti-Tutsi harassment.

***c. Witness to the Genocide in Butare***

The government anticipates calling a doctor who was previously with the relief organization Médecins Sans Frotières ("MSF"), or Doctors without Borders. The MSF doctor will testify that in April 1994, he was stationed at the hospital in Butare, Rwanda, where the defendant was attending medical school. He will testify that during relief trips to refugee camps and other locations within the country, he observed genocidal atrocities, including corpses littered throughout the countryside, and attacks on Tutsis, including his own MSF staff. He will also testify regarding how the genocide eventually arrived at the university hospital in Butare, and soldiers began killing Tutsi medical staff and patients.

***d. Witnesses to Nshimiye's Presence in Butare and Participation in the Genocide***

During the *Teganya* trial, Nshimiye denied being in Butare during the Rwandan genocide and denied participating in the genocide. The government anticipates calling a number of witnesses who were present in Butare during the genocide. The government anticipates that these witnesses will testify that Nshimiye was present in Butare at the time of the genocide and that he personally participated in the genocide.

***e. Teganya Case Agent***

The government anticipates calling a Homeland Security Investigations Special Agent who was assigned to the *Teganya* case. The government anticipates that he will testify about the *Teganya* case, including the nature of the allegations against *Teganya*, the substance of the *Teganya* defense, and Nshimye's testimony during that trial.

***f. Homeland Security Investigations Special Agent***

The government anticipates calling a Homeland Security Investigations Special Agent who participated in an interview in March 2024 with Nshimiye. The government anticipates that this agent will describe that interview (and authenticate and introduce the recording of that interview) as well as admit other documents and records collected during the investigation.

***g. Retired U.S. Citizenship and Immigration Services / Immigration and Naturalization Services Officer***

The government anticipates calling a retired employee of the U.S. Citizenship and Immigration Services and U.S. Immigration and Naturalization Services. This witness will testify about the process for applying as a refugee to the United States in Kenya in the years following the Rwandan genocide and the standards applicable to refugee applications. This witness will also testify about his review of information and statements provided by Nshimiye on his refugee applications forms and made during the refugee application process.

## III. LEGAL ISSUES

### *a. Elements of the Charged Offenses*

The defendant is charged with four counts of perjury and one count of obstruction of justice. The elements of perjury are:

- First, that Nshimiye was under oath as a witness before a jury of this Court;
- Second, that Nshimiye made a false declaration that was material to the proceeding; and
- Third, that at the time Nshimiye made the false declaration, he knew the declaration was false.

The elements of obstruction of justice are:

- First, that there was a pending judicial proceeding;
- Second, that Nshimiye had notice of the proceeding; and
- Third, that Nshimiye acted corruptly with the intent to influence or obstruct, or endeavored to influence or obstruct, the proceeding.

The government has submitted proposed jury instructions regarding these substantive offenses.

### *b. Anticipated Evidentiary Issues*

#### i. Motion to Exclude Expert Testimony

The government anticipates filing a motion to exclude the testimony of an expert, Philip LaRochelle, disclosed by the defense. According to the defendant's disclosure, LaRochelle anticipates offering eleven opinions. These opinions largely concern two topics: (i) opinions regarding the credibility of witnesses and factors impacting that credibility (the passage of time, political or social pressures, etc.); and (ii) the usefulness of historical records and prior proceedings—particularly the presence or absence of prior accusations against a defendant—to evaluate witness testimony and allegations. Neither of these are appropriate subjects for expert

testimony as explained in the government's forthcoming motion. In brief, as to the former category, assessing the credibility of witnesses is squarely for the jury. *See United States v. Kantengwa*, 781 F.3d 545, 562 (1st Cir. 2015) (indicating that it is improper for an expert to "'speculate as to the motivations and intentions of certain parties' or to 'opine on the credibility of other witnesses' accounts.'") (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013)). As to the latter, these opinions are little more than an attempt to repackage impermissible hearsay (and the absence of hearsay) into an expert opinion.

**ii. Motion Concerning the Scope of Testimony Regarding the *Teganya* Proceedings.**

The government anticipates filing a brief setting forth its view of the appropriate scope of testimony and evidence regarding the *Teganya* proceedings. In brief, it is an element of the perjury counts that Nshimiye's false testimony have been "material" to the *Teganya* proceeding. Similarly, for the obstruction count, the government must prove that Nshimiye acted "with the intent to influence or obstruct, or endeavored to influence or obstruct, *the proceeding*."

In brief, the government submits that for both charges it is necessary to introduce evidence regarding the substance of the allegations and specific charges against *Teganya*, the substance of the evidence and the theory of defense, and the charge put to the jury.

**iii. Rule 404(b) Evidence**

The government has disclosed to the defendant an intent to introduce evidence pursuant to Federal Rule of Evidence 404(b) that (i) in 1995 in his refugee application (ii) in 1997 in his application for legal permanent residence status; (iii) in 2001 in his citizenship application; and (iv) in 2024 in an interview with agents from Homeland Security Investigation, Nshimiye denied membership in the MRND, denied membership in the Interahamwe, denied being in Butare at the time of the genocide, and denied participating in the genocide. These repeated statements

make clear that Nshimiye's false statements were planned and deliberate, rather than products of accident or mistake.

## IV. COURTROOM PERSONNEL

At trial, the government anticipates that, in addition to the undersigned counsel, the government will be assisted in the presentation of evidence by Margaret Wilson. The government also requests permission for the case agent on this matter, Matthew Langille, to be present in the Courtroom during the trial.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

A. TYSEN DUVA
Assistant Attorney General

By: */s/ Chris Looney*
CHRISTOPHER LOONEY
Assistant U.S. Attorney
ALEXANDRA SKINNION
Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Chris Looney*
CHRISTOPHER LOONEY