UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 24-cr-10071-FDS |
| | ) | |
| ERIC TABARO NSHIMIYE, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION IN LIMINE TO EXCLUDE (I) EVIDENCE OR ARGUMENTS RELATED TO THE ABSENCE OF THE IDENTIFICATION OF THE DEFENDANT IN HISTORICAL OR COURT RECORDS; (II) GENERALIZED EVIDENCE RELATED TO CLAIMS OF RWANDAN GOVERNMENT PRESSURE ON WITNESSES; AND (III) DEFENSE EXPERT TESTIMONY OF PHILLIPE LAROCHELLE**

The United States of America, by its undersigned attorneys, respectfully moves to exclude (i) arguments or evidence related to the absence of the identification of the defendant, Eric Nshimiye, in historical or court records; (ii) generalized evidence related to claims that the Rwandan government pressures witnesses to influence their testimony; and (iii) testimony from proposed defense expert, Phillipe Larochelle.

These categories of evidence and argument, as well as the proposed expert testimony, repackage hearsay in the guise of expert testimony, improperly encroach on the jury's exclusive role in assessing the credibility of witnesses, are irrelevant and unreliable under Federal Rule of Evidence 702, and would serve only to confuse and distract the jury from relevant issues. Moreover, Larochelle is unqualified to offer the expert opinions and those opinions are inadequately disclosed.

## BACKGROUND

On September 9, 2026, defense produced its expert disclosure for Mr. Larochelle, a Canadian attorney whose practice has involved representing individuals accused in genocide-related proceedings. His disclosure sets out seven proposed opinions addressing two broad

subjects: (1) the significance of the defendant's absence from certain historical records documenting the Rwandan genocide and (2) factors he claims may affect witness credibility in genocide-related cases. His notice indicates these opinions are based largely on international tribunal records, secondary academic literature, and his experience as an attorney representing defendants in several international tribunals. *See* Exhibit A (Disclosure of Expert Opinion of Philippe Larochelle) (hereinafter, "Larochelle Disclosure"). The disclosed opinions echo arguments the defendant previously made in his motion to dismiss (Dkt. No. 135). There the defendant argued that Rwandan-government restrictions on free speech, Rwandan-government interference in the judicial process, and other forms of Rwandan government influence and pressure required dismissal of this case brought by the United States government. In that brief, the defendant also argued that the absence of Nshimiye's name from historical documentation and records of the International Criminal Tribunal for Rwanda are suggestive.

In short, the disclosed opinions and potential subjects of that testimony are improper for myriad reasons: they reflect an improper repackaging of hearsay under the guise of expert testimony; they are an improper means of categorically casting doubt on the credibility of witnesses; and they are improper attorney-advocacy offered through the trojan horse of expert testimony.

## ARGUMENT

### I. *The Court Should Exclude Evidence, Argument, and Opinions Regarding the Significance of the Defendant's Absence from Historical and Court Records Documenting the Rwandan genocide*

#### a. *<u>The Offered Expert Testimony is Simply Repackaged Hearsay Offered Through the Conduit of An Expert</u>*

The defendant's expert disclosure indicates that Larochelle will use the "methodology" of "compar[ing] … current allegations with prior witness statements, prior testimony,

contemporaneous records, judicial findings, and historical documentation concerning the same persons, places, and events" to offer opinions, including that "a reliable method for evaluating historical genocide allegations is comparison of present allegations against earlier statements, testimony, judicial findings, and contemporaneous records," "[r]ecords generated through ICTR, IRMCT, Gacaca, domestic judicial, immigration, extradition, and related proceedings may materially assist in evaluating witness consistency, reliability, chronology, and identification evidence," "[h]istorical compilations, institutional publications, investigative records, and prior proceedings may provide useful comparative information when assessing later allegations concerning an individual's alleged role during the genocide," and "[t]he appearance or nonappearance of an individual's name in earlier proceedings, statements, investigations, institutional publications, and historical records may provide useful contextual information when assessing later allegations."

This methodology and opinion amounts to little more than repackaging and offering hearsay under the guise of expert opinion. It appears the defendant's expert would testify, in effect: I have reviewed various records and documents of prior proceedings and investigations related to the Rwandan genocide (hearsay). Those records document proceedings relating to historical events (hearsay) and contain allegations made by witnesses against specific individuals (double hearsay). Those unidentified witnesses did not identify Eric Nshimiye (double hearsay). And then the defendant would offer the conclusion: his absence from these records (hearsay) is significant.

Outside of the context of expert testimony, none of this would be admissible—it would constitute an offer of unfairly prejudicial hearsay records containing hearsay statements given in foreign courts during unrelated proceedings by unidentified witnesses. These are multiple layers of the rankest of hearsay. *See, e.g.*, *United States v. Marrero-Ortiz*, 160 F.3d 768, 775 (1st Cir.

1998) (evidence of other court's disposition "may have served to confuse the jury rather than to assist it").

Just as it would be improper to admit this evidence directly, it is equally improper to permit it to be repackaged and admitted through the conduit of an expert. "[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135-36 (2d Cir. 2013). *See also, e.g.*, *United States v. Smith*, 869 F.2d 348, 355 (7th Cir. 1989) ("[A]n expert witness may not simply summarize the out-of-court statements of others as his testimony."); *United States v. Johnson*, 54 F.3d 1150, 1157-58 (4th Cir.1995) ("Rule [703] does not afford the expert unlimited license to testify or present a chart in a manner that simply summarizes the testimony of others without first relating that testimony to some 'specialized knowledge' on the expert's part as required under Rule 702 of the Federal Rules of Evidence."); *Jones ex rel. US v. Mass. Gen. Hosp.*, 780 F.3d 479, 494 (1st Cir. 2015) (An expert's testimony "is not a vehicle by which evidence that is otherwise inadmissible may be introduced." (quoting *Presley v. Com. Moving & Rigging, Inc.*, 25 A.3d 873, 893 (D.C. 2011)).

The defendant may, of course, explore these issues with witnesses by asking witnesses about both their own factual observations, by asking government witnesses who testify about whether they have previously identified Nshimiye, and by confronting them with their own prior statements. And the defendant can call witnesses who have testified in other proceedings concerning Butare to describe the events that occurred—and inquire about Nshimiye's presence. But the defendant should not be permitted to offer hearsay statements of absent witnesses repackaged as expert testimony.

*b. The Disclosure of the Opinions on These Subjects is Woefully Inadequate.*

Even if these repackaged hearsay statements were an appropriate subject for expert testimony, the opinions actually disclosed by Larochelle are woefully inadequate to support any relevant inference. To wit, drawing any meaningful conclusion from the absence of Nshimiye's name in the records of Rwandan Gacaca proceedings necessarily requires addressing certain foundational facts: Whether the records are comprehensive, whether they are accessible, indexed and/or searchable; how those records were searched; what events those records relate to; and more. Much the same is true of the other sources—Canadian and French judicial records and ICTR records—referenced in Larochelle's disclosure. Rather than provide the necessary foundation, the expert disclosure offers little or no information on any of these subjects. Absent these necessary connections, his opinions lack any coherence or relevance.

## *II. The Court Should Exclude Expert Testimony and Generalized Evidence Concerning Political Pressure and Witness Credibility*

The defendant's expert disclosure indicates that Larochelle will offer the opinions that "Witness testimony in genocide-related proceedings may be affected by personal, social, institutional, procedural, legal and historical factors," "[h]istorical witness accounts may evolve over time and may reflect influences beyond a witness's original observations" and that "[d]ocumented examples of false testimony, fabricated allegations, witness recantations, materially inconsistent accounts, and reliability concerns have occurred in certain Rwanda genocide-related proceedings.

These opinions are wholly improper, invade the jury's role, and are inappropriate subjects for expert testimony. Moreover, Larochelle is not a qualified expert to opine on these topics.

*a. Assessing the Credibility of Witnesses is for the Jury*

The First Circuit has repeatedly emphasized that "credibility choices and evidence-weighing are for juries." *United States v. Munyenyezi*, 781 F. 3d 532, 537 (1st Cir. 2015). *See generally United States v. Nascimento,* 491 F.3d 25, 46 (1st Cir. 2007) (stressing that "[s]ifting through conflicting testimony and determining where the truth lies is the sort of work that falls squarely within the jury's province"). For much this reason, it is improper for an expert to "'speculate as to the motivations and intentions of certain parties,' or to 'opine on the credibility of other witnesses' accounts.'" *United States v. Kantengwa*, 781 F.3d 545, 562 (quoting *Marvel*, 726 F.3d at 136).

The opinions offered by the defendant are highly generalized and non-specific opinions about factors that may influence a witness's truthfulness and credibility, *e.g.*, "Witness testimony in genocide-related proceedings may be affected by personal, social, institutional, procedural, legal and historical factors." Lararochelle Disclosure Opinion No. 2. This is an utterly unhelpful and anodyne statement intended only to sow mistrust in witnesses and suggest their testimony may be false. But assessing the credibility of witnesses is squarely the role of the jury and, as a corollary, generic expert testimony about the accuracy of memory is unnecessary and unhelpful. *See United States v. Zappey*, 164 F.4th 1348, 1354 (11th Cir. 2026) (affirming the district court's exclusion of testimony about the "reliability of a person's certainty in the accuracy of their memory… memory gap filling, memory conflation, and retention of inaccurate memories" to maintain "an attitude of disfavor towards expert testimony that could open the door to comment on the weight and credibility of witnesses" and because testimony about memory "was common knowledge, was not a good fit for the case, or was simply a method to attack the reliability of the witnesses.").

*b. The Disclosure of the Bases for These Opinions is Inadequate*

In addition to invading the province of the jury, the testimony is so generic and anodyne as to be either inadequately disclosed or irrelevant. Take the opinion that "Witness testimony in genocide-related proceedings may be affected by personal, social, institutional, procedural, legal and historical factors." This statement is little more than commonsense applicable not just to genocide-related proceedings but all testimony. A person's life history, circumstances, and experiences may affect their testimony. As bases and reasons for the opinion, Larochelle's disclosure offers this list of potential influences:

- personal rivalries and local disputes;
- property and inheritance disputes;
- social and community pressures;
- Strategic considerations;
- fear of consequences or retaliation;
- confession procedures and plea mechanisms;
- sentence mitigation or sentence-reduction incentives;
- witness exposure to accounts from other individuals;
- passage of time and memory degradation;
- witness intimidation and concerns regarding safety;
- laws of Rwanda on Genocide denial;
- the danger of opposing the Government of Rwanda's official Genocide narrative.

The first ten of these apply to virtually any criminal proceeding and require no expert to explain them. They are subjects routinely explored in cross-examination and routinely understood by jurors without expert assistance. As to the latter two—the laws of Rwanda on Genocide denial and the danger of opposing the Government of Rwanda's official Genocide narrative—the disclosure nowhere explains what laws exist in Rwanda regarding Genocide denial, what the "the Government of Rwanda's official Genocide narrative" is, what dangers are posed by opposing that narrative, and to whom.

Larochelle's expert opinions are either so totally anodyne and generic commonsense that no expert testimony is required and they are irrelevant, or the disclosure is a trojan horse for

Larochelle to offer undisclosed specific testimony attacking the credibility of Rwandan witnesses with specific assertions about, *e.g.*, the laws of Rwanda on genocide denial or alleged repercussions from defying Rwandan government authority. Either way, the court should exclude the testimony as improper and/or improperly disclosed.

### ***III. Larochelle is Not Qualified As an Expert and His Proposed Testimony is Mere Attorney Advocacy.***

*a. <u>Larochelle is Not a Qualified Expert</u>*

Philippe Larochelle is not qualified to offer expert testimony on the Rwandan genocide or Butare. He is not a historian, academic, or researcher who has studied the genocide—he is a career criminal defense attorney whose entire professional identity has been built representing individuals accused of the Rwandan genocide before the ICTR and its successor mechanisms. By his own public description, he has spent his career as defense counsel for Jérôme Bicamumpaka, Callixte Nzabonimana, André Ntagerura, Fulgence Kayishema, and others charged with genocide-related crimes. Outside of specific cases, he has publicly and repeatedly advanced the position that the ICTR process was biased against the accused, that prosecutorial and judicial impartiality was compromised, and that the tribunal was "instrumentalized" to serve a one-sided political narrative.[1]

Mr. Larochelle is not a neutral expert applying an academic or historical eye to a body of data—he is an advocate whose opinions on how genocide cases are investigated, charged, and

[1] Philippe Larochelle, *Defending Before the International Criminal Tribunal for Rwanda: An Interview with Philippe Larochelle*, Pub. Int'l L. & Pol'y Grp.: Lawyering Justice Blog (Dec. 23, 2025), https://www.publicinternationallawandpolicygroup.org/lawyering-justice-blog/2025/12/23/defending-before-the-international-criminal-tribunal-for-rwanda-an-interview-with-philippe-larochelle.

adjudicated are inseparable from decades of asserting institutional adversarial positions taken on behalf of defendants charged with genocide crimes.

*b. Mr. Larochelle is Acting as an Advocate—Not an Expert—in This Very Matter.*

Mr. Larochelle has publicly and repeatedly advanced the position that the ICTR process was biased against the accused and that prosecutions of genocide suspects reflect a pattern of prosecutorial overreach. His proposed testimony in this case is an extension of his advocacy. At a December 2024 conference panel,[2] Mr. Larochelle told the audience: "I'm assisting in the case of Nshimiye in the United States and you can see the number of cases that we're going to have fun to play with so that should be an interesting… because from what I see so far the prosecutor has adopted the same attitude in all those cases." *See* n.2 at 1:16:24. By his own admission, Larochelle is not a disinterested expert opining on the genocide—he is actively a part of the defense team ("*we're* going to have fun") assisting the defense in this very case, and he has already told a room full of defense practitioners that he views the prosecution here as having the "same attitude" he attributes to prosecutors across a slate of other genocide-related cases he is evidently tracking or involved in.

Larochelle is a lawyer advocate seeking to offer legal arguments in favor of the defendant in the guise and cloaked with the authority of an expert witness. Far from offering recognized expert testimony, the defendant seeks to put a defense lawyer on the stand to question the credibility of witnesses, make insinuations of recent fabrication under government pressure, and to otherwise attack the government's case.

---

[2] Philippe Larochelle, Remarks at ADC-ICT Annual Conference, Panel 3: Around the World in 80 Ways, YouTube, at 1:16:24 (Dec. 5, 2024), https://www.youtube.com/watch?v=-F7qUfl_5jI.

The proper tools for attacking the government case are through evidence, witness testimony, and cross-examination—not by placing a lawyer on the stand and offering defense arguments in the cloak of expert testimony.

**CONCLUSION**

"The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events. And the jobs of judging these witnesses' credibility and drawing inferences from their testimony belong to the factfinder." *Marvel*, 726 F.3d at 136. Permitting the testimony offered by defense expert Phillipe Larochelle would defy these basic principles and invade the province of the jury. Larochelle's testimony should be excluded and the defense should not be able to offer (i) arguments or evidence related to the absence of the identification of the defendant, Eric Nshimiye, in historical or court records; or (ii) generalized evidence related to claims that the Rwandan government pressures witnesses to influence their testimony.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

A. TYSEN DUVA
Assistant Attorney General

By: /s/ Christopher R. Looney
CHRISTOPHER LOONEY
Assistant United States Attorney
ALEXANDRA SKINNION
Trial Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

*s/Christopher Looney*
Christopher R. Looney
Assistant United States Attorney

Date: September 18, 2026