# Exhibit A

# EXPERT OPINION OF PHILIPPE LAROCHELLE

## I. Qualifications

My name is Philippe Larochelle. I am a Canadian lawyer admitted to the Bar of Quebec in 1998 and principal of Larochelle Avocats, Montreal, Quebec.

Since June 2001, a substantial portion of my professional practice has involved defending accusations arising from the 1994 Rwandan genocide, including proceedings before the International Criminal Tribunal for Rwanda ("ICTR"), the International Residual Mechanism for Criminal Tribunals ("IRMCT"), Canadian courts, immigration tribunals, and foreign courts. I have worked as counsel or co-counsel in, among others, the ICTR matters involving Callixte Nzabonimana and Jérôme-Clément Bicamumpaka, and have participated in proceedings involving Gérard Ntakirutimana, Eliezer Niyitegeka, Jean-de-Dieu Ndagijimana, Jacques Mungwarere, Léon Mugesera, Telesphore Dereva, and other Rwanda-related matters. During these proceedings, I have directly interviewed 100s of Rwandan witnesses about the events of the 1994 genocide, in many parts of Rwanda, Tutsis and Hutus, men, women, children, elderly people, inside and outside of Rwanda.

I have provided expert testimony, declarations, affidavits or opinions in the following cases:

-Faustin Rutayisire, in Canada;
-Brown et al. in the United Kingdom;
-Sosthène Munyemana in France;
-Jean Mpambara in Holland;
-Jean-Paul Micomyiza in Sweden

I also attach a complete curriculum vitae, which includes a publication list.

## II. Materials Reviewed

My opinions are based upon review of materials including:

1. Allegations and charging materials concerning Eric Nshimiye.
2. ICTR and IRMCT judgments, pleadings, exhibits, transcripts, and related materials relating to Rwanda and events occurring in Butare during 1994.
3. Judicial decisions discussing witness reliability, recantations, contradictions, and fabricated evidence, including the Mungwarere proceedings in Canada and Kagaba proceedings in the United States.
4. ICTR witness recantation materials, including Exhibit DNZ-461.
5. Public and judicial materials concerning witness QA and allegations of fabricated testimony arising from Butare-related proceedings.

6. Publicly available Rwandan records, including publications issued by the National Commission for the Fight Against Genocide ("CNLG").
7. The expert report of Professor Filip Reyntjens of 16th August 2007 in Prosecutor v. Nyiramasuhuko et al. ICTR-98-42-T. (Exhibit D-571B).
8. The expert report of Professor Filip Reyntjens of 26 December 2009 in the Kobagaya case, in the USA.
9. The judgment of the District Court of Porvoo, Finland, in Prosecutor v. François Bazaramba.
10. Materials reviewed and relied upon in my prior Rwanda-related declarations and affidavits.
11. Books including:

    -Filip Reyntjens : *Rwanda : Gouverner après le génocide*, Paris, 2014.
    -David Himbara : *Kagame's Killing Fields*, 2017.
    -Gérald Gahima: *Transitional Justice in Rwanda : Accountability for Atrocity*, 2013
    -Patrick Mbeko: *Rwanda Malheur aux vaincus 1994-2024 : 30 ans de crimes de manipulations et d'injustice couverts par l'Occident*, 2024.
    -Anjan Sundaram : *Bad news : Last Journalists in a Dictatorship*, 2016.
    -Susan Thomson: *From Genocide to Precarious Peace*, 2018.
    -Susan Thomon: *Whispering Truth to Power: Everyday Resistance to Reconciliation in Postgenocide Rwanda*, 2013.
    -Judi Rever: *In Praise of Blood: The Crimes of the Rwandan Patriotic Front*, 2018.
    -Nancy Armoury Combs: *Fact Finding Without Facts, The Uncertainty Evidentiary Foundations of International Criminal Convictions*, 2010.
    -Carina Tertsakian: *Le Château : The lives of prisoners in Rwanda*, 2008.

12. Reports on Rwanda by United Nations bodies, Human Rights Watch, Amnesty International, US Department of State Country Reports and Global Affairs Canada reports.

## III. Methodology

My opinions are based upon the following methodology:

1. Review of witness statements, witness testimony, judicial findings, exhibits, and investigative materials relating to genocide allegations.
2. Review of ICTR and IRMCT judgments, transcripts, exhibits, and witness records.
3. Review of Gacaca, domestic criminal, immigration, extradition, and related judicial proceedings.
4. Comparison of current allegations with:

    -prior witness statements,
    -prior testimony,
    -contemporaneous records,
    -judicial findings,

-and historical documentation concerning the same persons, places, and events.

5. Analysis of:

   -witness recantations,
   -contradictory testimony,
   -omissions,
   -changes in identification,
   -credibility findings,
   -and documented examples of fabricated evidence.

6. Consideration of recognized factors affecting witness reliability including:

   -passage of time,
   -memory degradation,
   -interpretation issues,
   -witness contamination,
   -exposure to information from other witnesses,
   -confession procedures,
   -sentence-reduction incentives,
   -witness intimidation,
   -personal interests,
   -collective reconstruction of events.

7. Approximately twenty-five years of professional involvement in Rwanda-related litigation and investigations.

The ICTR investigators started collecting statements 30 years ago, in 1996, immediately after the genocide, at a time where memories were fresh, and political incentives to distort the evidence much less present. It is a generally accepted notion that this type of evidence has a much higher level of reliability that evidence generated 30 years after the genocide.

**IV. Opinions**

**Opinion No. 1**

**Documented examples of false testimony, fabricated allegations, witness recantations, materially inconsistent accounts, and reliability concerns have occurred in certain Rwanda genocide-related proceedings.**

**Bases and Reasons**

Examples include:

- The Mungwarere proceedings, where evidence was presented and accepted concerning witness recantations and coordinated fabrication allegations.
- The Kagaba proceedings, in which a United States immigration judge discussed fabricated evidence and serious credibility concerns, and had his findings supported by well-known expert Allison Desforges
- ICTR witness recantation materials including Exhibit DNZ-461.
- ICTR materials concerning witness QA and allegations of fabricated testimony connected to Butare-related prosecutions.
- Professor Filip Reyntjens' discussion of false denunciations, witness manipulation, witness intimidation, and the need for caution in evaluating genocide-related testimony in the Butare report.
- Professor Reyntjens' discussion in his Kobagaya report of the common pattern of witnesses making statements in favour of genocide accused finding themselves accused after making these statements.
- Prosecution witnesses threatening Defence witnesses in Rwanda during the Mungwarere genocide trial, and making accusations of genocide denial after the acquittal of Mungwarere
- The Finnish Bazaramba judgment, which discusses witness reliability concerns, sentence incentives, confession procedures, and the evaluation of genocide-related testimony.

**Opinion No. 2**

**Witness testimony in genocide-related proceedings may be affected by personal, social, institutional, procedural, legal and historical factors.**

**Bases and Reasons**

Potential influences include:

- personal rivalries and local disputes;
- property and inheritance disputes;
- social and community pressures;
- Strategic considerations;
- fear of consequences or retaliation;
- confession procedures and plea mechanisms;
- sentence mitigation or sentence-reduction incentives;
- witness exposure to accounts from other individuals;
- passage of time and memory degradation;
- witness intimidation and concerns regarding safety;
- laws of Rwanda on Genocide denial;
- the danger of opposing the Government of Rwanda's official Genocide narrative.

This opinion does not address the truthfulness of any particular witness in this case.

**Opinion No. 3**

**A reliable method for evaluating historical genocide allegations is comparison of present allegations against earlier statements, testimony, judicial findings, and contemporaneous records.**

**Bases and Reasons**

This methodology is reflected in:

- my professional work involving Rwanda-related investigations;
- requests for ICTR and IRMCT disclosure materials;
- Professor Reyntjens' comparative assessment of testimony, records, and historical facts;
- and the Bazaramba court's analysis of witness consistency, memory, interpretation, and historical reconstruction.

The objective is to identify:

- consistency,
- contradiction,
- omission,
- later additions,
- shifts in witness identification,
- and changes in historical narratives over time.

**Opinion No. 4**

**Historical witness accounts may evolve over time and may reflect influences beyond a witness's original observations.**

**Bases and Reasons**

The Bazaramba judgment expressly discussed:

- memory degradation,
- interpretation issues,
- information acquired through Gacaca proceedings,
- witness exposure to the accounts of others,
- and collective reconstruction of historical events.

Professor Reyntjens similarly emphasized the need for careful evaluation of testimony in light of denunciation practices, witness pressures, manipulation, and surrounding social conditions.

Accordingly, earlier statements, earlier testimony, and contemporaneous documentation frequently provide valuable comparative information when assessing later allegations.

**Opinion No. 5**

**Records generated through ICTR, IRMCT, Gacaca, domestic judicial, immigration, extradition, and related proceedings may materially assist in evaluating witness consistency, reliability, chronology, and identification evidence.**

**Bases and Reasons**

Such records frequently contain information concerning:

- the same witnesses,
- the same victims,
- the same locations,
- the same alleged perpetrators,
- and the same events later described in subsequent proceedings.

Comparison of those records may assist in the evaluation of later allegations and witness accounts

**Opinion No. 6**

**Historical compilations, institutional publications, investigative records, and prior proceedings may provide useful comparative information when assessing later allegations concerning an individual's alleged role during the genocide.**

**Bases and Reasons**

The inclusion or omission of a person's name from such materials does not establish guilt or innocence. However, such information may be considered together with other historical records.

For example, a 2020 CNLG publication concerning doctors, nurses, and medical personnel alleged to have participated in genocide-related crimes in Butare identifies numerous individuals associated with CHUB, Butare University, and related locations, including Léonard Teganya. The publication does not identify Eric Nshimiye.

The significance, if any, of such an omission should be evaluated in conjunction with all other available records and evidence. Standing alone, inclusion or omission is not determinative.

**Opinion No. 7**

**When evaluating genocide-related allegations, the timing at which allegations first emerge, their consistency over time, and their relationship to prior proceedings, records, and investigations may provide information relevant to assessing reliability, consistency, and historical corroboration.**

**Bases and Reasons**

**A. Historical methodology**

A recurring method used in genocide-related investigations is comparison between:

- current allegations;
- earlier statements;
- prior testimony;
- Gacaca records;
- ICTR/IRMCT records;
- domestic proceedings;
- institutional publications;
- and contemporaneous documentation.

This methodology permits assessment of:

- consistency;
- omission;
- expansion of allegations;
- changes in identification;
- emergence of new perpetrators;
- and evolution of witness narratives over time.

**B. Historical absence may be relevant**

The absence of allegations in earlier records does not establish innocence.

However, where later allegations portray an individual as a prominent participant in extensively investigated historical events, the absence of that individual from earlier records may be information that warrants examination and comparison.

**C. Application to Nshimiye materials reviewed**

The materials currently reviewed reveal that recent allegations portray Eric Nshimiye as:

- an active participant in killings;
- a participant in rapes;
- a roadblock participant or leader;

- an actor at CHUB;
- a participant in the removal of patients;
- and a participant acting alongside numerous well-known alleged perpetrators, including individuals whose conduct has been extensively litigated and documented in genocide-related proceedings.

The same materials repeatedly associate him with individuals including:

- Léonard Teganya;
- Pauline Nyiramasuhuko;
- Shalom Ntahobali;
- Tharcisse Muvunyi;
- Ildephonse Nizeyimana;
- Désiré Munyaneza;
- Sosthène Munyemana;
- Jean-Paul Mycomiza
- and other prominent Butare-related figures.

**D. CNLG publication**

The 2020 CNLG publication identifying doctors, nurses, medical personnel, and medical students alleged to have participated in genocide-related crimes in Butare includes Léonard Teganya and numerous other medical-sector figures, including many living outside of Rwanda, but does not identify Eric Nshimiye.

The omission or Éric Nshimiye is a historical fact that may be considered together with other available records when evaluating later allegations portraying him as a significant participant in those same events.

**E. Apparent emergence of allegations**

The materials reviewed suggest that Eric Nshimiye was never mentioned in the ICTR, Canadian or French proceedings where his alleged associates were tried. However the statements taken by the RIB in 2024 put him in a very prominent role alongside these associates.

Whether that circumstance has any significance is ultimately a matter for the fact finder.

However, from a methodological perspective, the timing of allegations is itself a relevant factor for analysis.

**Historical Significance of Non-appearance in Earlier Records**

**Opinion**

The appearance or nonappearance of an individual's name in earlier proceedings, statements, investigations, institutional publications, and historical records may provide useful contextual information when assessing later allegations.

**Bases**

Where an individual is later alleged to have:

- participated in highly public events;
- acted alongside prominent perpetrators;
- committed numerous murders;
- committed rapes;
- operated roadblocks;
- participated in hospital operations;
- selected victims;
- or exercised authority during genocide-related crimes,

it may be informative to determine:

- whether the individual appears in earlier witness statements;
- whether the individual appears in Gacaca material;
- whether the individual appears in ICTR testimony;
- whether the individual appears in domestic proceedings;
- whether the individual appears in institutional compilations;
- whether allegations against the individual remained stable over time;
- and when particular allegations first emerged.

The relevance of such analysis lies not in proving innocence or guilt, but in evaluating consistency and historical corroboration.

**V. Limitations of Opinions**

I do not offer opinions concerning:

1. Whether Eric Nshimiye is guilty or innocent.
2. Whether any specific witness in this case is truthful or untruthful.
3. The ultimate determination of any fact reserved to the jury.
4. Whether any allegation in this case is true or false.

My opinions are limited to:

- historical context;
- witness reliability considerations;

- investigative methodology;
- interpretation of genocide-related records;
- documented examples of fabrication, recantation, and reliability concerns;
- and the use of comparative historical evidence in the evaluation of genocide-related allegations.

Signed under the pains and penalties of perjury, this 9 September 2026

Philippe Larochelle

# Philippe Larochelle

338, rue St-Antoine Est, bureau 300
Montreal (Quebec) H2Y 1A3

Phone: +1(514) 814-8841/ Office: +1(514) 866-3003/

e-mail: philippe.larochelle@gmail.com / plarochelle@larochelleavocats.com

Birth date: April 6th, 1973

Birthplace: Granby, Canada

Citizenship: Canadian

## EDUCATION

September 1997 - April 1998 **Quebec Bar School**
Sworn in: December 21st 1998.

September 1994 - May 1997 **Laval University, University of Western Ontario**
L.L.B.

January 1993 - April 1994 **Laval University**
Diploma in Political Science

## ELECTION EXPERIENCE

March 2023 – May 2023 **Member of the Appeal Panel**
March 2023 Timiskaming First Nation Election Appeal

April 2022-July 2022 **Election President**
July 2022 Innu Nation of Matimekush-Lac John Election

## PROFESSIONAL EXPERIENCE

2024- **INTERNATIONAL CRIMINAL COURT BAR ASSOCIATION (ICCBA)**

President

2025-2026 **INTERNATIONAL CRIMINAL COURT**

Lead counsel, Defence team of Edmond Beina, case ICC-01/14

2023-2025 **INTERNATIONAL CRIMINAL COURT**

Lead counsel, Defence team of Maxime Mokom, case ICC-01/14-01/22

2019-2021 **MECHANISM FOR INTERNATIONAL CRIMINAL TRIBUNALS**

Lead Counsel, Defence team of Jean de Dieu Ndagijimana, case MICT-18-116-PT.

2018-2026 **MECHANISM FOR INTERNATIONAL CRIMINAL TRIBUNALS**

Lead Counsel, Defence team of Dominique Ntawukulilyayo, case MICT-13-34-ES.

2018-2024 **LEGAL CONSULTANT for LAWYERS WITHOUT BORDERS**

Missions in Haïti, Mali and Mozambique to devise strategic litigation plans in collaboration with local lawyers and civil society actors.

Since January 2010 **LAROCHELLE AVOCATS (www.larochelleavocats.com)**

Founder of a civil and criminal litigation boutique, in Montreal, Canada.

2015-2018 **MECHANISM FOR INTERNATIONAL CRIMINAL TRIBUNALS**

Lead Counsel, Defence team of Eliezer Niyitegeka, case MICT-12-16-R.

2013-2016 **SPECIAL TRIBUNAL FOR LEBANON**

Co-Counsel, Defence team of Hussein Hassan Oneissi, case STL-11-01.

2015 **INTERNATIONAL CRIMINAL COURT**

Co-Counsel, Defence team of Narcisse Arido, case ICC-01/05-01/13.

2001-2014 **INTERNATIONAL CRIMINAL TRIBUNAL FOR RWANDA**

2009-2014: Co-Counsel, Defence team for Callixte Nzabonimana, case ICTR-98-44D-T.
2001-2009: Legal Assistant (2001-2007) and Co-Counsel (2007-2009), Defence team for Jérome-Clément Bicamumpaka, case ICTR-99-50-T .

2011-2012 **INTERNATIONAL CRIMINAL COURT**

-Consultant, Defence team for Callixte Mbarushimana during Appellate proceedings, case ICC-01/04-01/10.

2006-2007 **OGILVY RENAULT L.L.P., Montreal**

-Advocate in the litigation group.

2003-2004 **GOLDSTEIN, FLANZ & FISHMAN, Montreal**

-Advocacy work in Bankruptcy and Commercial matters before Quebec Courts.

2001-2006 **PHILIPPE LAROCHELLE, avocat**

-Civil and Criminal litigation.

2000 **EMBASSY OF CANADA, Abu Dhabi**

-Acting Education Officer, International Trade Division.

## TEACHING / SYMPOSIUMS

Summer school on International Justice : *Les travers de la justice internationale au Rwanda et au Liban*, with Vincent Courelle-Labrousse, 28 May 2015, Québec city, Canada.

Second International Meeting of Defence Offices, Panelist, 15-16 December 2014, The Hague, The Netherlands.

Leiden Summer School on International Criminal Law, 2014: *The rights of the accused*, 30 June 2014, The Hague, The Netherlands

International symposium of the École des Hautes Études Internationales: *Analyse contemporaine des conflits en Afrique.* Presentation: *Rwanda: 20 ans d'impunité pour le Front Patriotique Rwandais*, 20-22 March 2014, Quebec city, Canada.

Symposium: *Changer la société par le droit: Peut-on faire justice devant les Tribunaux Nationaux pour les plus grandes violations des droits humains.* Presentation: *Manipulation des faits et génocide rwandais, quelles conséquences pour les juridictions locales? Leçons à tirer de l'affaire R. c. Mungwarere,* 5 October 2013, Quebec city, Canada..

Symposium: *20 ans de Justice Pénale Internationale: devoir d'inventaire.*Presentation: *Retour aux juridictions nationales: Un procès au Canada, l'affaire Mungwarere*, 16 May 2013, Paris, France.

Third International Defence Conference on International Criminal Law: *Justice Pénale Internationale, Justice pour qui?* Presentation: *Politique Canadienne: Enjeux criminels ou d'immigration*, 29 September 2012, Montreal, Canada.

Laval University Symposium: *Procédure et Preuve en Droit international pénal*, DRT-6115, January-April 2012, Quebec City, Canada.

Symposium: *Coopération Judiciaire Internationale et Européenne*. Presentation: *L'extradition en droit canadien: Considérations théoriques et pratiques*, École de formation professionnelle des Barreaux de la Cour d'appel de Paris, 7 September 2009, Paris, France.

## OTHER

2016- **MEMBER OF THE EXECUTIVE COMMITTEE OF THE INTERNATIONAL HUMANITARIAN LAW JEAN PICTET COMPETITION**

Organisation and management of the Jean Pictet competition. Participations in 1998, 1999, 2009.

2005- **LAWYERS WITHOUT BORDERS, Nigeria**

Consulting and training in Nigeria, Mali, Mozambique and Haïti.

September-October 2008 **MP CANDIDATE FOR THE GREEN PARTY OF CANADA**

Riding of Hochelaga, 40th General Election.

July 2002 **NATIONAL UNIVERSITY OF IRELAND, Galway**

Summer School on the International Criminal Court

1998, 2000, 2001, 2003 **RENE CASSIN MOOT COURT COMPETITION,**

Participant, Coach and Jury member.

March 1999 **COUR DE CASSATION, Paris, France.**

Internship.

May 1998 **INTER-AMERICAN HUMAN RIGHTS MOOT COURT COMPETITION, Washington, D.C., U.S.A.**

Member of the Quebec Bar School Team.

## PUBLICATIONS

"Génocide rwandais. Quelle vérité judiciaire?", Chapter three of *Justice et droits de l'Homme – Les enjeux de la médiation internationale,* under the direction of Philippe Greciano, Mare & Martin, 2014.

"The Heart of Dark Jurisprudence", in *Justice Belied : The Unbalanced Scales of International Criminal Justice*, Baraka Books, Montreal, 2014.

"We were Sailing into Uncharted Waters: Flaws in the Application of Canada's *Crimes Against Humanity and War Crimes Act*", in collaboration with Marc Nerenberg, *Revue québécoise de droit international*, 27.2(2014), p. 135.

"Gérard, Énos et Jacques, une fable rwandaise", *La Revue Nouvelle,* 1-2015.

"Balancing the Right of Migrants and International Criminal Law: The Case of Alleged Rwandan War Criminals under Canadas Immigration Laws", in collaboration with Sébastien Chartrand, *La Revue du Barreau Canadien,* Vol. 93(2015), p. 1.

"Mécanisme pour les tribunaux pénaux internationaux" et "Outrage", entries in *Dictionnaire encyclopédique de la justice pénale internationale*, sous la direction de Olivier Beauveallet, Berger-Levrault, 2017.