UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cr-10071-FDS |
| | ) | |
| ERIC TABARO NSHIMIYE, | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION FOR RELEASE PENDING SENTENCING**

Defendant Eric Tabaro Nshimiye respectfully moves, pursuant to 18 U.S.C. § 3143(a)(1), for release pending sentencing on appropriate conditions. Mr. Nshimiye has remained continuously detained since March 21, 2024. As of October 27, 2026, he has spent 951 days, *i.e.* 31 months and 7 days in custody. That period exceeds the estimated actual incarceration associated with a 36-month sentence assuming good conduct credit. The defense requests expedited consideration in light of time already served and the Court's invitation to submit a release motion following the verdict.

Under 18 U.S.C. § 3624(b), an eligible defendant receives up to 54 days of good conduct credit for each year of the sentence imposed. A 36-month sentence, which would exceed the applicable advisory Guidelines range discussed below, would permit up to 162 days of such credit, resulting in approximately 934 days of actual incarceration. Mr. Nshimiye has already spent more time in custody than that.[1] The fact that Mr. Nshimiye has already served more time than he would

[1] This calculation does not account for additional time credits Mr. Nshimiye could have earned under the First Step Act had he been serving a sentence rather than detained pending trial. *See* 18 U.S.C. § 3632(d)(4)(A). Assuming eligibility, continuous qualifying participation, and the maximum earning rate of 15 days for every 30 days of participation, Mr. Nshimiye could hypothetically have accumulated as many as 464 days of additional credits during the 951 day period ending October 28, 2026 and would have potentially been able to apply as much as year of those credits to prerelease custody. The defense does not contend that Mr. Nshimiye actually accrued these credits during pretrial detention, which § 3632(d)(4)(B)(ii) excludes. Rather, this

be expected to serve under even an above-Guidelines sentence of 36 months strongly reduces any risk of flight and supports his release pending sentencing.

Following the jury's verdict on four perjury counts under 18 U.S.C. § 1623(a) and one obstruction count under 18 U.S.C. §§ 1503 and 2, this Honorable Court should order release upon finding by clear and convincing evidence that he is not likely to flee or pose a danger to any person or the community under conditions imposed pursuant to § 3142(b) or (c). Mr. Nshimiye requests expedited consideration of his request.[2]

## I. MR. NSHIMIYE DOES NOT POSE A DANGER TO ANYONE.

The prior detention ruling rested solely on concerns regarding Mr. Nshimiye's risk of flight, not dangerousness. *See* Dkt. 43 at 7. Moreover, Mr. Nshimiye's convictions arise from testimony and alleged obstruction, not crimes of violence. Although the jury's verdict must be respected, it provides no basis to conclude that Mr. Nshimiye poses a danger to any person or the community if released pending sentencing. To the contrary, for more than thirty years, Mr. Nshimiye has lived a law-abiding life in the United States, raising a family, maintaining steady employment, and contributing meaningfully to his community, all without any prior criminal history. His longstanding record of peacefulness and law-abidingness is corroborated not only by the numerous letters of support previously submitted to this Honorable Court, but also by the testimony of six neighbors, friends, and coworkers who appeared at trial and testified to his character and community ties. This evidence reflects decades of actual conduct and strongly

---

comparison further illustrates that his lengthy pretrial confinement has already exceeded the custodial period he might have served had a sentence been imposed earlier.

[2] This request does not waive any posttrial or sentencing objections or concede disputed allegations or enhancements.

supports a finding, by clear and convincing evidence, that Mr. Nshimiye would pose no danger to any person or the community if released pending sentencing.

## II. MR. NSHIMIYE IS NOT LIKELY TO FLEE.

Likewise, Mr. Nshimiye is not a flight risk. His family, home, and entire life remain firmly rooted in the United States, where he has lived for more than thirty years. Importantly, whatever incentive Mr. Nshimiye might theoretically have had to flee has diminished substantially, if not disappeared entirely, given the more than thirty-one months he has already spent in custody.

The defense respectfully submits that the applicable advisory Guidelines range is below the period of incarceration he has already served. The offenses of conviction carry base offense levels of 14 under U.S.S.G. §§ 2J1.2 and 2J1.3. Because all five counts arise from Mr. Nshimiye's testimony during a single appearance on April 2, 2019, the defense submits that they should be grouped under § 3D1.2. With no prior criminal history, an offense level of 14 yields an advisory range of 15 to 21 months. Even assuming, without conceding, a three-level enhancement for substantial interference, the resulting range would be 24 to 30 months, before consideration of the additional two-level reduction available to qualifying zero-point offenders under § 4C1.1.

The defense recognizes that the cross-reference provisions of U.S.S.G. §§ 2J1.2(c)(1) and 2J1.3(c)(1) may require consideration of § 2X3.1 where the resulting offense level is greater. Nevertheless, even assuming, without conceding, that the cross-reference applies and that Teganya's underlying immigration offense provides the appropriate starting point, the resulting advisory Guidelines range remains substantially below Teganya's and below the time Mr. Nshimiye has already served. Specifically, applying § 2X3.1's six-level reduction to the underlying offense level of 25 yields a total offense level of 19 and an advisory range of 30 to 37 months at Criminal History Category I. If Mr. Nshimiye qualifies for the two-level reduction under

§ 4C1.1, the resulting offense level would be 17, yielding a range of 24 to 30 months. Thus, even under this alternative calculation, Mr. Nshimiye has already served more than the upper end of the anticipated Guidelines range if the zero-point reduction applies.

Since Mr. Nshimiye has already served more time than he would ordinarily be required to serve even if this Court imposed an above-Guidelines sentence of 36 months, the prospect of any meaningful additional incarceration is substantially diminished. Having already spent more than thirty-one months separated from his family, Mr. Nshimiye has every reason to remain in the United States, comply with the Court's orders, and return to his family as soon as the judicial process permits.

Finally, any conceivable concern regarding his appearance can be adequately addressed through conditions of release.

## III. *TEGANYA* DOES NOT JUSTIFY ASSUMING A COMPARABLE SENTENCE

The government may point to the 97-month sentence imposed in *United States v. Teganya* as an indication of the sentence Mr. Nshimiye might face. But *Teganya* is not an appropriate comparator. The two cases differ materially in both the nature and extent of the underlying conduct and, more importantly, the applicable Guidelines calculations. Indeed, the sentencing transcript in *Teganya*, attached as Exhibit 1, demonstrates precisely why the sentence there should not be used to assess Mr. Nshimiye's potential sentencing exposure.

### A. Teganya's conduct was materially different.

At Mr. Teganya's sentencing, the government emphasized a prolonged pattern of conduct spanning multiple countries and immigration proceedings. As the government explained, Teganya's conduct began with his use of a fraudulent Zimbabwean passport to enter Canada, continued through numerous false statements to Canadian immigration authorities, and culminated

in his becoming a fugitive for approximately two years after Canadian authorities ordered his removal. When he subsequently entered the United States, he avoided presenting himself at a border station and proceeded into the country, only later advancing an asylum claim following his arrest. The government further emphasized that Teganya continued making false statements throughout the immigration process and ultimately testified falsely at his own criminal trial. Ex. 1 at 17-18.

Mr. Nshimiye's offenses of conviction are fundamentally different. His five convictions arise from testimony during a single appearance in the *Teganya* trial on April 2, 2019. They do not involve the same prolonged course of immigration-related conduct, years of fugitive status, or false testimony at his own criminal trial. These distinctions materially undermine any attempt to treat Teganya's sentence as a measure of Mr. Nshimiye's likely sentencing exposure.

**B. The applicable Guidelines calculations are materially different.**

The disparity between the two cases is even more apparent when their respective Guidelines calculations are examined. At sentencing, this Honorable Court calculated Teganya's offense level using the immigration fraud guideline under U.S.S.G. § 2L2.2, which resulted in an offense level of 25 based on the applicable serious-human-rights-offense provision. This Honorable Court separately calculated the perjury group under § 2J1.3, including a three-level enhancement for substantial interference with the administration of justice. The grouping rules produced an additional level, and the Court imposed a further two-level enhancement under § 3C1.1 based on Teganya's false testimony at his own criminal trial. These calculations resulted in a total offense level of 28 and an advisory Guidelines range of 78 to 97 months. Ex. 1 at 11.

None of those calculations can simply be imported into Mr. Nshimiye's case. Unlike Teganya, Mr. Nshimiye was not convicted of immigration fraud under § 2L2.2. His offenses are

governed initially by §§ 2J1.2 and 2J1.3, both of which provide a base offense level of 14. Although those provisions contain cross-references to § 2X3.1 where the resulting offense level is greater, their application does not automatically subject Mr. Nshimiye to Teganya's Guidelines calculation. Even assuming, without conceding, that Teganya's immigration offense supplies the appropriate underlying offense and the appropriate starting offense level is 25, the six-level reduction required by § 2X3.1 would yield an offense level of 19, or 17 if Mr. Nshimiye qualifies for the two-level reduction under § 4C1.1. At Criminal History Category I, those levels correspond to advisory ranges of 30 to 37 months and 24 to 30 months, respectively. Nor can the additional § 3C1.1 enhancement imposed in Teganya's case be automatically attributed to Mr. Nshimiye. Teganya received that enhancement based on findings concerning his false testimony at his own criminal trial, circumstances materially different from those presented here. The defense opposes any comparable enhancement absent an independent factual and legal basis and expressly preserves its objections to the applicability of the cross-reference and any additional adjustments.

Properly calculated, the defense submits that Mr. Nshimiye's advisory range will be substantially below Teganya's 78-to-97-month range and, indeed, below the amount of time Mr. Nshimiye has already served.

B. **Teganya received a sentence within the applicable Guidelines range.**

Finally, Teganya's sentence does not support the assumption that an above-Guidelines sentence is warranted here. To the contrary, this Honorable Court expressly considered whether a sentence outside the advisory range was appropriate but ultimately concluded that the Guidelines adequately accounted for the circumstances of Teganya's case. This Honorable Court imposed a sentence of 97 months, the upper end of the applicable 78-to-97-month range. Ex. 1 at 28-29.

Thus, even in a case involving the substantially more extensive conduct described above, this Honorable Court determined that a Guidelines sentence was sufficient. There is no basis at this stage to presume that the substantially lower advisory range applicable to Mr. Nshimiye would be inadequate or that an upward variance would be necessary. The defense recognizes that sentencing remains within the Court's discretion and that the Guidelines are advisory. Nevertheless, the actual sentence imposed in *Teganya* reinforces the importance of applying the Guidelines to the particular offenses and circumstances of each defendant, rather than assuming comparable punishment based on a historical connection between the cases.

Accordingly, Mr. Nshimiye's anticipated Guidelines range, coupled with the more than thirty-one months he has already served, substantially diminishes any remaining incentive to flee and strongly favors his release pending sentencing.

**WHEREFORE**, Mr. Nshimiye respectfully requests this Honorable Court to order his release pending sentencing under 18 U.S.C. § 3143(a)(1) upon the least restrictive conditions this Honorable Court deems necessary.

## LOCAL RULE 7.1. CERTIFICATION

Undersigned counsel conferred with counsel for the government, who indicated that it may oppose this request after reviewing the issues raised by this motion.

Respectfully submitted,

/s/ Kurt P. Kerns
Kurt P. Kerns, Kansas S.C. No. 15028
KERNS LAW GROUP
328 N. Main Street
Wichita, KS 67202
Telephone: (316) 265-5511
Email: kurtpkerns@aol.com

/s/ Maksim Nemtsev
Maksim Nemtsev, Mass. Bar No. 690826

20 Park Plaza, Suite 1000
Boston, MA 02116
Telephone: (617) 227-3700
Email: menemtsev@gmail.com
*Counsel for Defendant Eric Nshimiye*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and authentic copy of the above and foregoing was filed and served electronically pursuant to the CM/ECF system on October 27, 2026, on all counsel of record.

/s/ Maksim Nemtsev
Maksim Nemtsev, Mass. Bar No. 690826